IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

LAZEREK AUSTIN,

    Plaintiff,

vs.                                                       Case No. 18–cv–1152–DRH

WILLIAM SPILLER,
S. GEE,
JOHN DOE #1,
JOHN DOE #2,
JOHN DOE #3,
JOHN DOE #4,
CONFIDENTIAL SOURCE #1,
CONFIDENTIAL SOURCE #2,
CONFIDENTIAL SOURCE #3,
CONFIDENTIAL SOURCE #4,
CONFIDENTIAL SOURCE #5,
KENT BROOKMAN,
JASON HART,
HILL,
KELLY PIERCE,
LORI OAKLEY,
JACQUELINE LASHBROOK,
FORBES,
COX,
FRENCH,
TERI KENNEDY, and
JOHN BALDWIN

    Defendants.

**MEMORANDUM AND ORDER**

**HERNDON, District Judge:**

    Plaintiff Lazerek Austin, an inmate in Pontiac Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C.

§ 1983 for events that occurred at Menard and Pontiac Correctional Centers. Plaintiff seeks damages, declarative relief, and injunctive relief. This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A.

However, review of Plaintiff's Complaint reveals that he has attempted to improperly join certain claims. Thus, prior to proceeding with review of this case pursuant to § 1915A, the Court will sever certain claims into a separate case pursuant to Fed. R. Civ. P. 21 and *George v. Smith*, 507 F.3d 605 (7th Cir. 2007).

## The Complaint

Plaintiff was an inmate at Menard in the spring of 2017. (Doc. 1, p. 4). In April 2017, inmates Henderson, Smith, and Davis attacked several guards, allegedly because the sergeant was frequently drunk and excessively punitive. *Id*. Plaintiff alleges that prior to January 2018, he had never spoken to Henderson or Smith in his life. (Doc. 1, p. 5).

In the subsequent investigation, Plaintiff was interviewed by Does # 1 and 2. (Doc. 1, p. 5). Does #1 and 2 asked Plaintiff what gang he was in, and when Plaintiff denied being in a gang, told Plaintiff that other inmates had reported that Plaintiff had approved the assault prior to its occurrence. (Doc. 1, pp. 5-6). Plaintiff stated that he had no information about the incident, he did not know the inmates involved, and that it seemed to him that the incident was not gang-related. (Doc. 1, p. 6). Plaintiff repeatedly asked to end the interview because he

had no information, but he was repeatedly pressured into making false statements. *Id*.

The next day on April 26, 2017, Spiller, Doe #3, and Doe #4 interviewed Plaintiff. (Doc. 1, p. 7). The investigators repeatedly asserted that Plaintiff had something to do with the assault, and Plaintiff repeatedly denied knowing anything about it. (Doc. 1, pp. 7-9). The investigators ultimately threatened Plaintiff, telling him that they could do whatever they wanted to a person in custody, that his grievances would be denied, and that Plaintiff would regret not cooperating. (Doc. 1, p. 9). Spiller told Plaintiff he would be getting a new cell. *Id*. Gee signed the paperwork placing Plaintiff on investigative status. (Doc. 1-1, p. 5).

Plaintiff was transferred to the North 2 segregation unit. *Id*. Plaintiff alleges the conditions in that cell were unconstitutional and that he was deprived of his property. (Doc. 1, p. 10). Plaintiff received an investigative report, but alleges that the report was insufficient to put him on notice of the reason for the investigation. (Doc. 1, pp. 11-12). Plaintiff also alleges that he did not receive an interview in order to respond to the investigative report, as required by Illinois Administrative Code 504.50(c). (Doc. 1, p. 12).

Plaintiff received an allegedly bogus disciplinary report on May 9, 2017 signed by Spiller alleging that he participated in a security threat group and/or unauthorized leadership activity. *Id*. Plaintiff alleges that the report failed to detail any prohibited conduct, as required by Illinois Administrative Code

3

504.30(c)(2)(4)(5). (Doc. 1, pp. 12-13). Plaintiff alleges that Spiller conspired with the 5 confidential sources to write the disciplinary report out of retaliation because Plaintiff refused to cooperate with his investigation. (Doc. 1, p. 13).

Plaintiff was placed in administrative detention on May 10, 2017, prior to the disciplinary hearing. (Doc. 1, p. 24). When he complained about it to Lashbrook, she told him to file a grievance. (Doc. 1, pp. 24-25). Plaintiff alleges that he was placed in administrative segregation in violation of the Illinois Administrative Code. (Doc. 1, p. 25). Plaintiff alleges that he was improperly placed in administrative segregation when he was on segregation status, and that Hill and Oakley refused to address his grievances regarding his placement. (Doc. 1, pp. 25-26). He further alleges that he was never given a hearing regarding his administrative segregation placement. (Doc. 1, p. 26).

On May 16, 2017, Plaintiff went before the adjustment committee, chaired by Lt. Brookman. (Doc. 1, p. 15). Brookman told Plaintiff he had to find him guilty because it involved a staff assault and the other officers would be "down his back" if he did not. *Id*. But Brookman said he would only give Plaintiff 6 months of discipline. (Doc. 1, p. 16). Plaintiff alleges that the adjustment committee quoted Spiller's report verbatim and did not independently determine the reliability of the confidential sources. *Id*.

After the hearing, Plaintiff did not get his adjustment committee summary for a couple of weeks. *Id*. When he asked Spiller why, Spiller told him it was because he was going to receive more than 6 months. (Doc. 1, pp. 16-17).

Plaintiff received the summary on June 7, 2017, but in it was not signed by the committee members or the warden in violation of the Illinois administrative code. (Doc. 1, p. 17). As Spiller promised, Plaintiff received 1 year across the board in sanctions. *Id*. Plaintiff sent his counselor a grievance about the summary; it was denied on June 26, 2017. (Doc. 1, pp. 17-18). Plaintiff alleges that Spiller implied that the grievance was denied because "officers were assaulted." (Doc. 1, p. 18). Lashbrook concurred in the denial. *Id*. Plaintiff filed another grievance to Hill on June 12, 2017, contesting the increased sanction from 6 months to 1 year. *Id*. Plaintiff alleges that the second disciplinary report that Hill gave him in response to his complaints was fraudulent; he filed a grievance regarding that report on June 15, 2017. (Doc. 1, p. 19). The June 12 and June 15 grievances were denied as duplicates. *Id*. Plaintiff also filed a grievance on June 13, 2017 regarding the investigative tactics, which he alleges was improperly returned to him for failing to attempt to resolve the issue with his counselor. (Doc. 1, p. 20). Plaintiff also filed a grievance alleging the newly-enacted regulation that he was punished for violating was unconstitutionally vague. (Doc. 1, p. 21). That grievance was also rejected. *Id*. Plaintiff alleges that all of his grievances were rejected out of retaliation for the staff assault. *Id*. He further allege that Lori Oakley could not have "thoroughly reviewed" the grievances because she did not respond to all of his issues. (Doc. 1, pp. 21-22). Lashbrook also declined to address the issues. (Doc. 1, pp. 22-23).

Plaintiff was transferred to Pontiac Correctional Center on November 5, 2017. (Doc. 1, p. 27). When he arrived at Pontiac, he was told that he was on administrative segregation and assigned to the administrative detention cell house. *Id*. Even though Plaintiff alleges that he was originally placed on administrative segregation at Menard, he did not receive an official notice that he was in administrative detention until April 10, 2018. *Id*. The notice alleged that he was the highest ranking Vice Lord leader in the east cell house at Menard, and had prior knowledge of a major staff assault. *Id*. Plaintiff had a hearing before French, Horton, Pierce, Forbes, Cox and Jane Doe[1] on April 19, 2018. (Doc. 1 p. 28). Plaintiff reiterated that he was not involved in a security threat group or the relevant incident, but he was not released from administrative segregation. (Doc. 1, pp. 28-30).

## Discussion

Based on the allegations of the Complaint, the Court finds it convenient to divide the pro se action into 17 counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.

> **Count 1** – Spiller, Gee, and Does #1-4, conspired to retaliate against Plaintiff by placing him in administrative segregation for refusing to implicate other prisoners in violation of the First Amendment;

---

[1] Horton, Pierce, and Jane Doe were not included in this case caption or in Plaintiff's list of Defendants. The Court has therefore assumed that Plaintiff did not intend to state claims against these individuals. Fed. R. Civ. P. 10; *see also Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005) (to be properly considered a party a defendant must be "specif[ied] in the caption").

6

**Count 2** – Confidential Sources #1-5 conspired with Spiller, Gee, and Does # 1-4 by knowingly providing false information in order to issue Plaintiff a bogus disciplinary report and justify his placement in segregation in order to deprive him of his Fourteenth Amendment due process rights and in violation of the First Amendment;

**Count 3** – Brookman, Hart, and Lashbrook, in conspiracy with others, knew the disciplinary report issued to Plaintiff was false and written in retaliation in violation of the First Amendment, but found Plaintiff guilty regardless, denying him of his due process rights under the Fourteenth Amendment;

**Count 4** – Pierce, Oakley, and Lashbrook failed to adequately investigate Plaintiff's grievances regarding the investigation and discipline in conspiracy with others in order to deprive Plaintiff of his Fourteenth Amendment due process rights and his First Amendment right to be free of retaliation;

**Count 5** – Hill forged or arranged to be forged the adjustment committee report to cover up the lack of signatures on the original report in furtherance of the conspiracy to retaliate against Plaintiff in violation of his First Amendment rights and to deprive him of his Fourteenth Amendment right to due process;

**Count 6** – Hill participated in the conspiracy by depriving Plaintiff the opportunity to file grievances regarding Spiller in retaliation in violation of the First Amendment and to deprive Plaintiff of his Fourteenth Amendment due process rights;

**Count 7** – Lashbrook placed Plaintiff in administrative detention without the approval of the Director in violation of Plaintiff's due process rights;

**Count 8** – Spiller, Gee, Does #1-4, Confidential Sources #1-5, denied Plaintiff his due process rights, individually and in conspiracy when they acted to issue Plaintiff a false disciplinary report, which lacked proper notice;

**Count 9** – Baldwin denied Plaintiff his due process rights when he approved Plaintiff's assignment to administrative detention at Menard;

**Count 10** – Baldwin, Lashbrook, Spiller, Brookman, and Hart denied Plaintiff procedural due process in violation of the Fourteenth Amendment when they punished him pursuant to IDOC's 111 Rule,

which is unconstitutionally vague because it does not provide prisoners notice of what is prohibited conduct;

**Count 11** – Spiller subjected Plaintiff to unconstitutional conditions of confinement in violation of the Eighth Amendment and retaliated against Plaintiff in violation of the First Amendment when he placed Plaintiff in a dirty cell without blankets, sheets, cleaning supplies, hygiene products, a usable mattress, toilet paper, his blood pressure medication, or a change of clothes on April 26, 2017;

**Count 12** – Spiller, Gee, Does #1-4, Confidential Sources #1-5, Brookman, Hart, Pierce, Oakley, Hill, Lashbrook, and Baldwin conspired to place Plaintiff in segregation or sustained his placement in segregation without legitimate justification and under extreme conditions in violation of the Eighth Amendment;

**Count 13** – Baldwin and Lashbrook, subjected Plaintiff to unconstitutional strip searches when they enforced a policy of strip searching all segregation inmates at Menard in violation of the Fourth and Eighth Amendments;

**Count 14** – Spiller, Gee, Does #1-4, Confidential Sources #1-5, Kent, Brookman, Hart, Lashbrook, Oakley, Pierce, and Hill violated Plaintiff's Fourteenth Amendment rights to equal protection under the laws when they intentionally treated him differently than other prisoners in the Menard east cell house by targeting him for discipline;

**Count 15** – Pontiac administrative detention committee members, French, Forbes, Cox, Kennedy, and Baldwin conducted a sham hearing on Plaintiff's administrative detention at Pontiac in conspiracy with other intel investigators to retaliate against Plaintiff in violation of his First Amendment rights for refusing to cooperate with Menard intel officials and in order to deprive Plaintiff of his due process rights under the Fourteenth Amendment;

**Count 16** – French, Kennedy, Forbes, Cox, and Baldwin violated Plaintiff's Eighth Amendment rights when they placed him in administrative segregation at Pontiac because the conditions at Pontiac are unconstitutional;

**Count 17** – Kennedy and Baldwin had an unconstitutional strip search policy at Pontiac regarding administrative segregation inmates which was intended to harass and not for any valid penological

purpose in violation of the Eighth Amendment and Fourth Amendment.

Counts 1-14 arise out of Plaintiff's time at Menard Correctional Center, whereas Counts 15-17 arise out of Plaintiff's time at Pontiac, where he is presently incarcerated. In *George v. Smith*, the Seventh Circuit emphasized that unrelated claims against different defendants belong in separate lawsuits, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits, "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act. 507 F.3d 605, 607 (7th Cir. 2007) (citing 28 U.S.C. § 1915(b)(g)); *Wheeler v. Talbot*, 695 F. App'x 151, 152 (7th Cir. 2017) (failing to sever mis-joined claims prejudices the United States Treasury); *Owens v. Godinez*, 860 F.3d 434, 436 (7th Cir. 2017). A prisoner who files a "buckshot complaint" that includes multiple unrelated claims against different individuals should not be allowed to avoid "risking multiple strikes for what should have been several different lawsuits." *Turley v. Gaetz*, 625 F.3d 1005, 1011 (7th Cir. 2010). The Court has broad discretion as to whether to sever claims pursuant to Federal Rule of Civil Procedure 21 or to dismiss improperly joined Defendants. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011); *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir. 2000).

Federal Rule of Civil Procedure 20 permits joinder of all claims that "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences; [when] any question of law of fact common to all defendants will arise in the action." That means that a plaintiff cannot join separate claims against different

defendants or sets of defendants in the same lawsuit, unless the plaintiff asserts a claim for relief against each defendant that arises out of the same transaction or occurrence or series thereof, and presents common questions of law or fact. *Owens*, 860 F.3d at 436; *George*, 507 F.3d at 607.

Unrelated claims may be joined pursuant to Federal Rule of Civil Procedure 18 where Rule 20 has already been satisfied. *Intercon Research Associates, Ltd. v. Dresser Ind., Inc.*, 696 F.2d 53, 57 (7th Cir. 1982). Therefore, the analysis the Court must perform in determining whether claims are properly joined is twofold: (1) first, a court must determine whether defendants are properly joined pursuant to Rule 20, (2) second, a court may then consider any unrelated claims against one or more of the group of defendants properly joined in the first step.

After applying the Federal Rules of Civil Procedure, it is clear that Plaintiff's claims regarding Menard and Pontiac belong in separate lawsuits. Plaintiff raises claims that arise out of his time at two different prisons. There are different defendants involved in each placement and policy decision that Plaintiff complains about. Plaintiff attempts to get around this conclusion by alleging that all of the events that occurred were part of a single conspiracy. Many of Plaintiff's conspiracy allegations are conclusory, but even if they were not, the Seventh Circuit has still said that the districts should sever claims that occurred at different prisons, even where the plaintiff has alleged a conspiracy. *See Owens v. Evans*, 878 F.3d 559, 561 (7th Cir. 2017) (noting district court should have severed case involving claims against 44 defendants, alone and in conspiracy,

across 4 prisons). Moreover, it is not clear that venue is proper as to the claims arising out of Pontiac because none of the events at issue occurred in this district, nor can the defendants be found here, although the Court leaves full discussion of that issue for another day.

Rule 20 specifies that the Court must divide the Complaint into two actions. Next, the Court must consider whether Rule 18 permits joinder of any claims against common parties. Rule 20 may permit Plaintiff to join his claims against Baldwin for approving various official actions in a single lawsuit. However, given that the other Pontiac claims will proceed in a separate lawsuit regardless, and that there are common facts between the other Pontiac claims and Plaintiff's Pontiac claims against Baldwin, the Court will exercise its discretion under Fed. R. Civ. P. 21 and sever Plaintiff's claim against Baldwin based on the Pontiac incidents into the Pontiac action. *See Chavez v. Ill. State Police*, 251 F.3d 612, 632 (7th Cir. 2001). This severance will promote judicial economy because the Pontiac claims have common issues of fact.

Counts 1-14 shall remain in this action. A separate order will be issued in this case to review the merits of those claims. Plaintiff shall be provided with a copy of the merits review order as soon as it is entered. No service shall be ordered on any defendant at this time, pending the § 1915A review. Plaintiff has also requested a preliminary injunction, although he has not filed a separate motion at this time. As the request is against Defendants Baldwin, Kennedy, French, Forbes, and Cox and relates to Plaintiff's current request for

administrative detention, the Clerk of Court is directed to docket a preliminary injunction in the severed case.

## Disposition

**IT IS HEREBY ORDERED** that Counts 15-17, which are unrelated to Counts 1-14, are severed into a separate case. Counts 1-14 against Spiller, Gee, John Does #1-4, Confidential Sources #1-5, Brookman, Hart, Hill, Pierce, Oakley, Lashbrook, and Baldwin shall stay in this case. The severed case shall contain Count 15-17 against Forbes, Cox, French, Kennedy, and Baldwin. The Clerk of Court is directed to terminate Forbes, Cox, French, and Kennedy from this action.

The claims in the severed cases shall be subject to merits review pursuant to 28 U.S.C. §1915A after a new case number and judge assignment is made. In the new case in this Court, the Clerk is **DIRECTED** to file the following documents:

1) This Memorandum and Order;
2) The Complaint (Doc. 1);

The Clerk is further **DIRECTED** to docket a preliminary injunction in the new case. Plaintiff **will be responsible for an additional $400.00 filing fee** in the newly severed case. No service shall be ordered on the defendants in the severed case until the § 1915A review is completed.

**IT IS SO ORDERED.**

Judge Herndon
2018.06.19 07:10:26
-05'00'

**United States District Judge**