IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS


LAZEREK AUSTIN,

      Plaintiff,

vs.                                   Case No. 18−cv−1152−DRH

WILLIAM SPILLER,
S. GEE,
JOHN DOE #1,
JOHN DOE #2,
JOHN DOE #3,
JOHN DOE #4,
CONFIDENTIAL SOURCE #1,
CONFIDENTIAL SOURCE #2,
CONFIDENTIAL SOURCE #3,
CONFIDENTIAL SOURCE #4,
CONFIDENTIAL SOURCE #5,
KENT BROOKMAN,
JASON HART,
HILL,
KELLY PIERCE,
LORI OAKLEY,
JACQUELINE LASHBROOK, and
JOHN BALDWIN


      Defendants.


## MEMORANDUM AND ORDER

**HERNDON, District Judge:**

      Plaintiff Lazerek Austin, an inmate in Pontiac Correctional Center, brings

this action for deprivations of his constitutional rights pursuant to 42 U.S.C.

§ 1983 for events that occurred at Menard Correctional Center. Plaintiff seeks

damages and declarative relief.  This case is now before the Court on 2 motions and for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless.  *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000).  An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The claim of entitlement to relief must cross "the line between possibility and plausibility."  *Id*. at 557.  At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed.  *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal.

## The Complaint

The Court previously determined that Plaintiff had attempted to bring unrelated claims in this suit on June 19, 2018, and severed 3 claims into a new action that was subsequently transferred to the Central District of Illinois, where Plaintiff voluntarily dismissed it rather than pay the filing fee.  (Doc. 4)

Plaintiff was an inmate at Menard in the spring of 2017.  (Doc. 1, p. 4).  In April 2017, inmates Henderson, Smith, and Davis attacked several guards, allegedly because the sergeant was frequently drunk and excessively punitive.  *Id*.  Plaintiff alleges that prior to January 2018, he had never spoken to Henderson or Smith in his life.  (Doc. 1, p. 5).

In the subsequent investigation, Plaintiff was interviewed by Does # 1 and 2.  (Doc. 1, p. 5).  Does #1 and 2 asked Plaintiff what gang he was in, and when Plaintiff denied being in a gang, they told Plaintiff that other inmates had reported that Plaintiff was a gang leader and had approved the assault prior to its occurrence.  (Doc. 1, pp. 5-6).  Plaintiff stated that he had no information about the incident, he did not know the inmates involved, and that it seemed to him that the incident was not gang-related.  (Doc. 1, p. 6).  Plaintiff repeatedly asked to end the interview because he had no information, but investigators continued to pressure him to make false statements.  *Id*.

The next day on April 26, 2017, Spiller, Doe #3, and Doe #4 interviewed Plaintiff again.  (Doc. 1, p. 7).  The investigators again asserted that Plaintiff had something to do with the assault, and Plaintiff repeatedly denied knowing

anything about it. (Doc. 1, pp. 7-9). The investigators ultimately threatened Plaintiff, telling him that they could do whatever they wanted to a person in custody, that his grievances would be denied, and that Plaintiff would regret not cooperating. (Doc. 1, p. 9). Spiller told Plaintiff he would be getting a new cell. *Id*.

Plaintiff was transferred to the North 2 segregation unit and placed on investigative status. (Doc. 1, pp. 9-10). Plaintiff alleges the conditions in that cell were unconstitutional and that he was deprived of his property. (Doc. 1, p. 10). Plaintiff received an investigative report, but alleges that the report was insufficient to put him on notice of the reason for the investigation. (Doc. 1, pp. 11-12). Plaintiff also alleges that he did not receive an interview in order to respond to the investigative report, as required by Illinois Administrative Code 504. 50(c). (Doc. 1, p. 12).

Plaintiff received an allegedly bogus disciplinary report on May 9, 2017 signed by Spiller alleging that he participated in a security threat group and/or unauthorized leadership activity. *Id*. Plaintiff alleges that the report failed to detail any prohibited conduct, as required by Illinois Administrative Code 504.30(c)(2)(4)(5). (Doc. 1, pp. 12-13). Plaintiff alleges that Spiller conspired with the 5 confidential sources to write the disciplinary report out of retaliation because Plaintiff refused to cooperate with his investigation. (Doc. 1, p. 13).

Plaintiff alleges that he was improperly placed in the administrative detention unit on May 10, 2017 without a hearing and in violation of the Illinois

Administrative Code, and that Lashbrook approved of the placement. (Doc. 1, pp. 24-26).

On May 16, 2017, Plaintiff went before the adjustment committee, chaired by Lt. Brookman. (Doc. 1, p. 15). Brookman told Plaintiff he had to find him guilty because the conduct involved a staff assault and the other officers would be down his back if he did not. *Id.* But Brookman said he would only give Plaintiff 6 months' discipline. (Doc. 1, p. 16). Plaintiff alleges that the adjustment committee quoted Spiller's report verbatim and did not independently determine the reliability of the confidential sources. *Id.*

After the hearing, Plaintiff did not get his adjustment committee summary for a couple of weeks. *Id.* When he asked Spiller why, Spiller told him it was because he was going to receive more than 6 months. (Doc. 1, pp. 16-17). Plaintiff received the summary on June 7, 2017, but in it was not signed by the committee members or the warden in violation of the Illinois Administrative Code. (Doc. 1, p. 17). As Spiller promised, Plaintiff received 1 year across the board in sanctions. *Id.* Plaintiff sent his counselor a grievance about the summary; it was denied on June 26, 2017. (Doc. 1, pp. 17-18). Plaintiff alleges that Spiller implied that the grievance was denied because "officers were assaulted." (Doc. 1, p. 18). Lashbrook concurred in the denial. *Id.*

Plaintiff filed another grievance to Hill on June 12, 2017, contesting the increased sanction from 6 months to 1 year. *Id.* Plaintiff alleges that the second disciplinary report that Hill gave him in response to his complaints was

fraudulent; he filed a grievance regarding that report on June 15, 2017. (Doc. 1, p. 19). The June 12 and June 15 grievances were denied as duplicates. *Id*. Plaintiff also filed a grievance on June 13, 2017 regarding the investigative tactics, which he alleges was improperly returned to him for failing to attempt to resolve the issue with his counselor. (Doc. 1, p. 20). Plaintiff also filed a grievance alleging the newly-enacted regulation that he was punished for violating was unconstitutionally vague. (Doc. 1, p. 21). That grievance was also rejected. *Id*. Plaintiff alleges that all of his grievances were rejected out of retaliation for the staff assault. *Id*. He further alleges that Lori Oakley could not have "thoroughly reviewed" the grievances because she did not respond to all of his issues. (Doc. 1, pp. 21-22). Lashbrook also declined to address the issues. (Doc. 1, pp. 22-23).

## Discussion

The Court previously determined that Plaintiff had brought 14 claims which had sufficient grounds for joinder to proceed together in this action:

**Count 1 –** Spiller, Gee, and Does #1-4, conspired to retaliate against Plaintiff by placing him in administrative segregation for refusing to implicate other prisoners in violation of the First Amendment;

**Count 2** – Confidential Sources #1-5 conspired with Spiller, Gee, and Does # 1-4 by knowingly providing false information in order to issue Plaintiff a bogus disciplinary report and justify his placement in segregation in order to deprive him of his Fourteenth Amendment due process rights and in violation of the First Amendment;

**Count 3** – Brookman, Hart, and Lashbrook, in conspiracy with others, knew the disciplinary report issued to Plaintiff was false and written in retaliation in violation of the First Amendment, but found Plaintiff guilty regardless, denying him of his due process rights under the Fourteenth Amendment;

**Count 4** – Pierce, Oakley, and Lashbrook failed to adequately investigate Plaintiff's grievances regarding the investigation and discipline in conspiracy with others in order to deprive Plaintiff of his Fourteenth Amendment due process rights and his First Amendment right to be free of retaliation;

**Count 5** – Hill forged or arranged to be forged the adjustment committee report to cover up the lack of signatures on the original report in furtherance of the conspiracy to retaliate against Plaintiff in violation of his First Amendment rights and to deprive him of his Fourteenth Amendment right to due process;

**Count 6** – Hill participated in the conspiracy by depriving Plaintiff of the opportunity to file grievances regarding Spiller in retaliation in violation of the First Amendment and to deprive Plaintiff of his Fourteenth Amendment due process rights;

**Count 7** – Lashbrook placed Plaintiff in administrative detention without the approval of the Director in violation of Plaintiff's due process rights;

**Count 8** – Spiller, Gee, Does #1-4, and Confidential Sources #1-5 denied Plaintiff his due process rights, individually and in conspiracy when they acted to issue Plaintiff a false disciplinary report, which lacked proper notice;

**Count 9** – Baldwin denied Plaintiff his due process rights when he approved Plaintiff's assignment to administrative detention at Menard;

**Count 10** – Baldwin, Lashbrook, Spiller, Brookman, and Hart denied Plaintiff procedural due process in violation of the Fourteenth Amendment when they punished him pursuant to IDOC's 111 Rule, which is unconstitutionally vague because it does not provide prisoners notice of what is prohibited conduct;

**Count 11** – Spiller subjected Plaintiff to unconstitutional conditions of confinement in violation of the Eighth Amendment and retaliated against Plaintiff in violation of the First Amendment when he placed Plaintiff in a dirty cell without blankets, sheets, cleaning supplies, hygiene products, a usable mattress, toilet paper, his blood pressure medication, or a change of clothes on April 26, 2017;

**Count 12** – Spiller, Gee, Does #1-4, Confidential Sources #1-5, Brookman, Hart, Pierce, Oakley, Hill, Lashbrook, and Baldwin conspired to place Plaintiff in segregation or sustained his placement

in segregation without legitimate justification and under extreme conditions in violation of the Eighth Amendment;

**Count 13** – Baldwin and Lashbrook, subjected Plaintiff to unconstitutional strip searches when they enforced a policy of strip searching all segregation inmates at Menard in violation of the Fourth and Eighth Amendments;

**Count 14** – Spiller, Gee, Does #1-4, Confidential Sources #1-5, Kent, Brookman, Hart, Lashbrook, Oakley, Pierce, and Hill violated Plaintiff's Fourteenth Amendment rights to equal protection under the laws when they intentionally treated him differently than other prisoners in the Menard East Cell house by targeting him for discipline;

**Conspiracy Allegations**

Plaintiff repeatedly alleges that Defendants acted in conspiracy to deprive him of his civil rights. Conspiracy claims are generally held to a higher pleading standard than other claims, particularly after *Iqbal* and *Twombly*. *See Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009); *see also Loubser v. Thacker*, 440 F.3d 439, 443 (7th Cir. 2006) ("[Conspiracy] differs from other claims in having a degree of vagueness that makes a bare claim of 'conspiracy' wholly uninformative to the defendant.").

To prove a § 1983 conspiracy claim, the plaintiff must prove that 1) a state official and a private individual reached an understanding to deprive the plaintiff of his constitutional rights, and 2) those individuals were willful participants in the unlawful activity with the state actor. *Cooney v. Casady*, 735 F.3d 514, 518 (7th Cir. 2013) (citing *Lewis v. Mills*, 677 F.3d 324, 333 (7th Cir. 2012)). Typically, the evidence must reflect a "concerted effort" between the parties. *Whitlock v. Brueggemann*, 682 F.3d 567, 577 (7th Cir. 2012). It is not enough

for the conspirators to share the same objective, rather a conspiracy requires that there be an agreement, express or implied, to reach a desired result. *Cooney*, 735 F.3d at 519 (quoting *Hampton v. Hanrahan*, 600 F.2d 600, 621 (7th Cir. 1979)).

Plaintiff has alleged a conspiracy between both state and non-state actors. But he has done little more than sprinkle the word "conspiracy" throughout the Complaint. Moreover, his allegations do not establish that Defendants were motivated by a shared agreement to deny him his constitutional rights. In fact, Plaintiff's Complaint repeatedly has the Defendants telling him that they are motivated to investigate and punish the incident because of the serious nature of a staff assault and the threat such an incident poses to the safety and security of the institution. Many of Plaintiff's allegations are against prison staff for doing things that are within their job descriptions, i.e. interviewing witnesses and suspects, hearing disciplinary reports, serving disciplinary reports, and responding to grievances. Without allegations that make it plausible that Defendants actually had an agreement to violate Plaintiff's constitutional rights, his conspiracy allegations are too vague. Plaintiff's unhappiness with the result of a disciplinary proceeding does not turn all of the events related to the discipline into a conspiracy against him. Accordingly, Plaintiff's conspiracy allegations are dismissed without prejudice for failure to state a claim. The Court will still consider Plaintiff's claims individually, albeit without the conspiracy allegation.

**Confidential Sources #1-5**

Plaintiff has named 5 inmates in connection with certain claims. These inmates must be dismissed from this action with prejudice because they are not state actors. *Gayman v. Principal Financial Services*, 311 F.3d 851, 852 (7th Cir. 2002); *Brokaw v. Mercer County*, 235 F.3d 1000, 1016 (7th Cir. 2000) ("[A] private citizen cannot ordinarily be held liable under Section 1983 because that statute requires action under color of state law . . ."). While allegations of conspiracy with a state actor may create an inference that a non-state actor is acting under color of state law, *Brokaw*, 235 F.3d at 1000, Plaintiff has not adequately pleaded a conspiracy. Confidential Sources #1-5 will be dismissed from this litigation with prejudice as improper parties as to all claims based on their personal involvement. The dismissal of the Confidential Sources #1-5 shall be without prejudice as to any amended complaint Plaintiff wishes to present that re-pleads his conspiracy claims.

**Count 1**

Plaintiff has alleged that Spiller, Gee, and Does #1-4 retaliated against him on April 26, 2017 by placing him in investigative or administrative segregation because they did not like his responses to their questions during the investigation. To succeed on a First Amendment retaliation claim, a plaintiff must prove 1) that he engaged in conduct protected by the First Amendment; 2) that he suffered a deprivation that would likely deter First Amendment activity in the future; and 3) that the protected conduct was a "motivating factor" for taking the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).

An offender's truthful responses to an internal affairs investigation are consistent with legitimate penological objectives and constitute protected conduct, even if prison staff is unhappy with the content of the responses. *McKinley v. Schoenbeck*, 731 F. App'x 511, 514 (7th Cir. 2018). Plaintiff has alleged that he was telling the truth,[1] an allegation which the Court must accept at the pleading stages. Plaintiff has made an adequate allegation that he engaged in protected conduct in Count 1.

Moreover, Plaintiff has made a plausible allegation that his truthful comments during the investigation were the motivating factor for Spiller, Gee, and Does #1-4 to recommend his placement in segregation. Placement in segregation has been previously found to plausibly deter First Amendment activity. *Id*. Accordingly, the retaliation claim in Count 1 will be permitted to proceed.

**Count 2**

Plaintiff has also alleged that Spiller, Gee, and Does #1-4 retaliated against him by writing a disciplinary report that they knew to be false. Subjecting an inmate to the prison disciplinary process could conceivably deter protected conduct, and so Plaintiff's retaliation claim in Count 2 will proceed.

Plaintiff has further alleged that the issuing of a false disciplinary report violated his due process rights. When a plaintiff brings an action under § 1983 for procedural due process violations, he must show that the state deprived him

---

[1] Of course, it is odd that despite Plaintiff's repeated insistence that he has never participated in gang activity, one of the Vice-Lords who submitted an affidavit to that effect is Plaintiff's co-defendant in his underlying criminal matter. Plaintiff is warned that attempts to mislead the Court can be punishable by sanctions and further criminal prosecution. *See Rivera v. Drake*, 767 F.3d 685, 686 (7th Cir. 2014) (dismissing a lawsuit as a sanction where an inmate submitted a false affidavit and subsequently lied on the stand)

of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). The Seventh Circuit has limited the ability of prisoners to assert that terms in segregation implicate a liberty interest. *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009). Whether a prisoner has a liberty interest implicated by special confinement relies on whether the confinement imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In assessing whether disciplinary segregation amounts to a constitutional violation, a court must examine the length of a prisoner's confinement in segregation in combination with the conditions he endured there. *Kervin v. Barnes*, 787 F.3d 833, 836-37 (7th Cir. 2015); *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013).

Prison disciplinary hearings satisfy procedural due process requirements where an inmate is provided: (1) written notice of the charge against the prisoner twenty four (24) hours prior to the hearing; (2) the right to appear in person before an impartial body; (3) the right to call witnesses and to present physical/documentary evidence, but only when doing so will not unduly jeopardize the safety of the institution or correctional goals; and (4) a written statement of the reasons for the action taken against the prisoner. *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974); *Cain v. Lane*, 857 F.2d 1139, 1145 (7th Cir. 1988).

Not only must the requirements of *Wolff* be satisfied, but the decision of the disciplinary hearing board must be supported by "some evidence." *Black v.*

*Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994). Courts must determine whether the decision of the hearing board has some factual basis. *Webb v. Anderson*, 224 F.3d 649 (7th Cir. 2000). Even a meager amount of supporting evidence is sufficient to satisfy this inquiry. *Scruggs v. Jordan,* 485 F.3d 934, 941 (7th Cir. 2007).

Plaintiff has alleged that as a result of the disciplinary process, he was subjected to unconstitutional conditions in segregation that lasted more than 6 months. That is an adequate allegation of a deprivation of a liberty interest. Plaintiff has also alleged that he was not given proper notice and that his disciplinary sanction was not supported by some evidence, in part because the evidence against him was fabricated, which are sufficient allegations that the internal affairs defendants deprived him of his due process rights. Accordingly, the Due Process claim in Count 2 shall also be permitted to proceed.

**Count 3**

Plaintiff has also alleged that the Defendants named in Count 3 made comments to him suggesting that they may have known that the disciplinary report was fabricated, or that they felt pressure from the other Defendants to act in a certain manner. Plaintiff has also alleged that the relied solely on the disciplinary report for their findings, without properly interrogating the truth of the issues. This is sufficient to support an inference that the Count 3 defendants knew about the conduct in Count 2 and facilitated it, approved it, condoned it, or turned a blind eye. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)

(citing *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988). If Defendants facilitated the conduct of others, that is a sufficient allegation of personal involvement. Plaintiff's statements regarding the sufficiency of the evidence against him also support his claim that Brookman, Hart, and Lashbrook deprived him of his due process rights. Accordingly, the retaliation and due process claims in Count 3 shall also be permitted to proceed against Brookman, Hart, and Lashbrook.

### Count 4 and 6

Plaintiff's retaliation claims in Counts 4 and 6 must be dismissed because Plaintiff has alleged that the Defendants were actually motivated by the staff assault, not his protected conduct (his speech during the investigation), and because the denial of a grievance where a prisoner has otherwise had access to the grievance system does not state a constitutional claim. *See Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) (plaintiff's argument that conspiracy by prison officials to deny administrative review of his grievances by dismissing them was frivolous where plaintiff had access to the grievance procedure but he did not obtain the outcome he desired). A negative response to a grievance is not the type of conduct that could plausibly deter First Amendment activity because the administrative remedies system contemplates that some grievances will be denied. Plaintiff has not alleged that he was actually denied access to the grievance system, and has alleged that he was able to file multiple grievances and appeals that received responses.

Plaintiff has also alleged that the denial of his grievances violated his rights under the Due Process clause, but that position is squarely foreclosed by case law. Prison grievance procedures are not constitutionally mandated and thus do not implicate the Due Process Clause per se. As such, the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). Accordingly, both Counts 4 and 6 will be dismissed without prejudice for failure to state a claim.

**Count 5**

Plaintiff's retaliation claim in Count 5 must also be dismissed. Plaintiff has alleged that there were irregularities with the adjustment committee report, and that the original report he received did not have the correct signatures. He then argues that the corrected report he later received was a forgery to cover up the lack of signatures on the original report. It appears from Plaintiff's exhibits that the first report had the signatures of the committee redacted, while the second report showed them. (Doc. 1-2, pp. 4-7). Plaintiff has not that he was harmed or injured in any way as a result of this inconsistency. Plaintiff has not alleged that Hill was aware that he engaged in protected conduct during the investigation. Receiving a report with redacted signatures or an incorrect date is also not the kind of conduct that would deter protected activity. After all, the names of the

committee members were always available to Plaintiff. Accordingly, Count 5 will also be dismissed for failure to state a claim.

**Counts 7 and 9**

Plaintiff has alleged that Lashbrook and Baldwin violated his constitutional rights by approving his placement in administrative segregation. As an initial matter, Plaintiff's assertion that he was ever in administrative segregation appears to be conclusory; Plaintiff believes that, because he was moved into the administrative segregation unit prior to his disciplinary hearing, his official status changed. The exhibits submitted by Plaintiff clearly show that he was placed on investigatory status on April 26, 2017, (Doc. 1-1, p. 5), and then issued a disciplinary report on May 9, 2017. (Doc. 1-1, p. 6). Plaintiff concedes that he was on investigatory status for 10 days, which accounts for that time period. Discipline of 1 year segregation was imposed on May 16, 2017, although, Plaintiff alleges that he did not receive notice of the disciplinary report until sometime in June. The responses to the grievances that Plaintiff submitted in the record also show that the staff at Menard considered him in disciplinary, not administrative segregation.

Plaintiff has no liberty interest in the distinction he is making here. Plaintiff has alleged that because he was housed in the administrative segregation unit, he was subjected to all of the regulations and restrictions on administrative segregation inmates in addition to the regulations and restrictions he was subjected to as a disciplinary segregation inmate. But he has not provided any

facts tending to show that his placement in administrative segregation subjected him to more or harsher rules and regulations then just being in disciplinary segregation standing alone. The Complaint states that "administrative segregation phase 1 conditions are identical to punitive segregation conditions." (Doc. 1, p. 42).

The Seventh Circuit has previously found that it is not the cell location that determines what privileges an inmate may be entitled to, but rather his status is the relevant factor. *Walker v. Paciorek*, 70 F.3d 1275 (table) (7th Cir. 1995) ("Moreover, the fact that [plaintiff] was physically in the same cell [when released from disciplinary segregation to administrative segregation] does not alter the type of privileges he was entitled to . . ."). Plaintiff concedes that he was on disciplinary segregation for a part of the time, and he has raised the conditions at issue there in other claims. To have a stand-alone claim that his placement on the administrative segregation wing further violated his constitutional rights, Plaintiff would have to show that the differences in the privileges he could expect as an inmate on administrative segregation were substantially worse than the privileges he could expect on disciplinary segregation. *Id*. ("[Plaintiff's] attempt at distinguishing [administrative from disciplinary] segregation is not relevant, since the 'disciplinary segregation, with insignificant exceptions, mirrored those conditions imposed upon inmates in administrative segregation and protective custody.'") (quoting *Sandin v. Connor*, 515 U.S. 472, 486 (1995)). The only difference that Plaintiff identifies is that his placement in administrative

segregation is indefinite, but the matter of Plaintiff's continued placement in administrative segregation has been severed from the claims at issue here. Accordingly, Plaintiff has not adequately pleaded that he had a liberty interest in Counts 7 and 9, and those claims will be dismissed without prejudice for failure to state a claim.

Plaintiff has also alleged that his placement violated the Illinois Administrative Code, but violation of the Code does not per se establish a violation of the Constitution, and Courts are required to defer to prison administrators on issues of prison administration, such as housing. *Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012); *Alston v. DeBruyn*, 13 F.3d 1036, 1042 (7th Cir. 1994).

**Count 8**

In Count 8, Plaintiff alleges that that Spiller, Gee, and Does 1-4 issued him a false disciplinary report without notice. This claim is encompassed by Count 2, which alleges that Spiller Gee and Doe issued Plaintiff a false disciplinary report in retaliation and in violation of his due process rights. Accordingly, Count 8 will be dismissed as duplicative.

**Count 10**

In Count 10, Plaintiff alleges that the regulation under which he was disciplined is too vague. He claims he was charged with 111: Security Threat Group or Unauthorized Organization Leadership, which defines the offense as "knowingly accepting or assuming any leadership position or position of authority

18

over other offenders in any security threat group or unauthorized organization; or pressuring, recruiting, organizing, authorizing, or directing others to engage in security threat group or unauthorized organizational activities, meetings, or criminal actions on behalf of an organization not approved." Plaintiff claims that Spiller never put him on notice of which conduct violates this provision.

The Court of Appeals for the Seventh Circuit has held that in the prison context, regulations must be sufficiently definite to give prisoners of ordinary intelligence reasonable notice of what conduct is prohibited. *Toston v. Thurmer*, 689 F.3d 828, 832 (7th Cir. 2012) ("A deprivation of liberty without fair notice of the acts that would give rise to such a deprivation violates the due process clause [.]"); *Rios v. Lane*, 812 F.2d 1032, 1038 (7th Cir. 1987) ("It is a fundamental precept of constitutional law . . . that a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process law.") (internal citation omitted).

While Plaintiff has adequately pleaded that his time in disciplinary segregation implicates a liberty interest, Plaintiff's allegations as to the regulation are too vague. Plaintiff has not specifically identified the wording at issue that he thinks a reasonable person would find confusing. The regulation also clearly prohibits the conduct that Plaintiff was accused of—authorizing others to carry out an attack on guards on behalf of a security threat group. Plaintiff denies that he has engaged in that conduct, and alleged that he was actually punished for

refusing to cooperate with the investigation. These allegations do not establish some sort of structural flaw in the underlying regulation. If Plaintiff wishes to proceed on this claim, he must identify conduct to which the regulation has been improperly applied or language that reasonable people would find confusing. Accordingly, Count 10 will be dismissed without prejudice.

**Count 11**

Plaintiff's retaliation claim in Count 11 survives threshold review. Plaintiff has alleged that Spiller subjected him to unconstitutional conditions of confinement in retaliation for Plaintiff's comments during the investigation. Plaintiff has alleged that Spiller made explicit comments that the cell placement was in retaliation for Plaintiff's conduct during the investigation, and unconstitutional conditions of confinement could plausibly deter a person of ordinary firmness from filing a grievance. Therefore, Plaintiff has made a plausible allegation of retaliation.

Moreover, Plaintiff also has an Eighth Amendment conditions of confinement claim against Spiller based on his allegations that he was denied blankets, sheets, cleaning supplies, hygiene products, a usable mattress, toilet paper, blood pressure medication, a change of clothes, and placed in an unhygienic cell. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016). Count 11 survives threshold review.

**Count 12**

Count 12 alleges that Spiller, Gee, Does #1-4, Brookman, Hart, Pierce, Oakley, Hill, Lashbrook, and Baldwin knew about the conditions in segregation and either placed Plaintiff there or condoned the placement. Plaintiff's claim against Spiller is duplicative of Count 11, so Spiller will be dismissed from Count 12. Plaintiff does not allege that he complained about the conditions in segregation to anyone other than Spiller. (Doc. 1, p. 10). The Court has also reviewed the grievances attached to the Complaint, and none of them complain about the conditions in segregation, meaning that none of the other named defendants was placed on notice of the conditions of confinement. Without notice, the defendant cannot have the requisite subjective mental state. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Accordingly, Count 12 will be dismissed without prejudice for failure to state a claim because the Complaint does not establish that Plaintiff complained about the conditions in segregation to anyone other than Spiller, and Spiller's conduct is addressed in Count 11.

**Count 13**

Plaintiff alleges that Baldwin and Lashbrook enforced a policy of strip searching all segregation inmates. Strip searches that are not related to legitimate security needs or are conducted in a harassing manner in order to humiliate and inflict psychological pain, may be found unconstitutional under the Eighth Amendment. Further, even if a valid penological reason existed for the search, "the manner in which the searches were conducted must itself pass constitutional muster." *Mays v. Springborn*, 719 F.3d 631, 634, (7th Cir. 2013) (group of

inmates were strip searched together, gratuitously exposing prisoners' nude bodies to each other, while guards uttered demeaning comments) (quoting *Mays v. Springborn*, 575 F.3d 643, 649 (7th Cir. 2009)); *Mays v. Springborn*, 575 F.3d 643, 649-50 (7th Cir. 2009); *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003) (a strip search conducted in a harassing manner intended to humiliate and inflict psychological pain could violate the Eighth Amendment); *see also Meriwether v. Faulkner*, 821 F.2d 408 (7th Cir. 1987) (allegation of calculated harassment by strip searches stated Eighth Amendment claim), *cert. denied*, 484 U.S. 935 (1987).

Plaintiff has alleged that Baldwin and Lashbrook created and/or condoned a strip search policy at Menard that was designed to punish, harass, and humiliate segregation inmates, and not for any legitimate penological purpose. This is sufficient to state an Eighth Amendment claim, and Count 13 will be permitted to proceed in this litigation.

**Count 14**

Plaintiff has also alleged that his rights were violated under the Equal Protection clause under a class-of-one theory. The Equal Protection Clause of the Fourteenth Amendment protects individuals against arbitrary and irrational government treatment. *Geinosky v. City of Chicago*, 675 F.3d 743, 747 (7th Cir. 2012). To adequately plead a class-of-one equal protection claim, a plaintiff must allege that he was intentionally treated differently from other similarly situated individuals without a rational basis for such treatment. *Id*. (citing *Engquist v.*

*Oregon Dept. of Agriculture*, 553 U.S. 591, 601 (2008)). The treatment must be wrongful and differ from the norm or common practice in a manner that demonstrates discrimination. *McDonald v. Village of Winnetka*, 371 F.3d 992, 1009 (7th Cir. 2004). A plaintiff may plead himself out of court if the complaint provides a rational basis for the treatment at issue. *D.B. ex rel. Kurtis B. v. Kopp*, 725 F.3d 681, 686 (7th Cir. 2013).

Plaintiff has alleged that he was treated differently than other prisoners in Menard's East Cell house. But the fact that Plaintiff was housed in Menard's East Cell house has nothing to do with the chain of events that Plaintiff has complained of here; it is not relevant to a determination of whether Plaintiff was treated differently than other similarly situated prisoners. The relevant comparison would be a prisoner who was interviewed by internal affairs in connection with a staff assault. Plaintiff has not alleged that he was treated differently than other prisoners in that situation. Accordingly, Count 14 will be dismissed without prejudice for failure to state a claim.

### Pending Motions

**Motion to Clarify and Reconsider Doc. 4, Order Severing Claims**

Plaintiff asks the Court to reconsider its prior order severing certain claims. (Doc. 5). However, Plaintiff's arguments amount to no more than a restatement of claims and arguments he makes in his Complaint. Additionally, Plaintiff relies heavily on his theory that all 22 originally named defendants acted together as part of a conspiracy. The Court has found that theory insufficiently

pleaded, and dismissed it. Plaintiff also does not argue that v`enue against the Pontiac defendants is proper in the Southern District. Having found no error of law or fact, and no other reason to reconsider its prior order, the Court denies Plaintiff's Motion to reconsider. *Sigsworth v. City of Aurora, Ill.*, 487 F.3d 506, 511-12 (7th Cir. 2007); *Romo v. Gulf Stream Coach, Inc.*, 250 F.3d 1119, 1121 n.3 (7th Cir. 2001); *Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000)(internal citations omitted).

**Motion for Plaintiff to Appear for a Video and/or Telephone Conference**

Plaintiff requests that the Court hold a hearing at the merits review stage. (Doc. 6). In his Motion he also refers to arguments made in his motion to reconsider the Court's prior order severing his claims. (Doc. 6). Merits-review hearings are the creation of the Central District of Illinois, but the Southern District is not in the practice of holding them. While the Seventh Circuit has stated that these types of hearings "may" be held, *Hughes v. Farris*, 809 F.3d 330, 334 (7th Cir. 2015), it has described the practice as "unusual." *Terry v. Spencer*, 888 F.3d 890, 894 (7th Cir. 2018). The Court knows of no case or rule of Federal Procedure compelling the practice, and Plaintiff has not pointed to any. Moreover, this Court's local rules specifically state that any matter may be "determined upon the pleadings and the motion papers without oral argument." SDLR 7.1(h). It is an exercise of the Court's discretion whether it will hold a hearing, and the Court finds that nothing about Plaintiff's case compels it to hold

a hearing here on either the merits-review of the Complaint or on Plaintiff's arguments regarding his severance order.  Plaintiff's Motion is denied.  (Doc. 6).

**Disposition**

**IT IS HEREBY ORDERED** that Counts 1-3, 11, and 13 survive threshold review against Defendants Spiller, Gee, Does #1-4, Brookman, Hart, Lashbrook, and Baldwin, respectively.   Counts 4-7, 9-10, 12 and 14 are **DISMISSSED without prejudice** for failure to state a claim.   Count 8 is **DISMISSED without prejudice** as duplicative.   Plaintiff's allegations of conspiracy are **DISMISSED without prejudice**.   Confidential Sources #1-5 are **DISMISSED without prejudice** as to any valid conspiracy claim, and **with prejudice** to all other claims.  Plaintiff's Motion to Reconsider the severance order is **DENIED**.  (Doc. 5).  Plaintiff's Motion to Appear for a Video and/or Telephone Conference is **DENIED**.  (Doc. 6).

**IT IS ORDERED** that the Clerk of Court shall prepare for Defendants Spiller, Gee, Brookman, Hart, Lashbrook, and Baldwin:   (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service

on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on the Unknown (John Doe) Defendants until such time as Plaintiff has identified them by name in a properly filed amended complaint. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(3) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff.  Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

Judge Herndon
2018.09.13
07:26:13 -05'00'

**United States District Court**