United States District Court For the Southern District of Illinois

Lazerek Austin #K77091
         plaintiff

         -vs-

William Spiller
 Shaw Gee
James Cook
Kevin Reichert
Kevin Verble
Kent Brookman
Jason Hart
Jacqueline Cashbrook
John Baldwin

Case# 3:18
-cv- 01152 NJR-MAB

Plaintiff, Lazerek Austin, Second Amended Complaint:

Nature of Case:

1) 1) This Action is Brought pursuant to 42 U.S.C. 1983 to redress the deprivation, under the color of state law of Rights secured by the constitution of the united states this court has Jurisdiction under 28.U.S.C. Section 1331 and 1343.

2) 2) Venue is proper in this district pursuant to 28 U.S.C. 1391 as at least one defendent resides in this Judicial District, and the incident that Gives rise to plaint.ff's constitutional Rights being Violated were Initiated at Menard Corr. center located in this Judicial District.

Parties:

3) Plaintiff is currently Housed at pontiac correctional

center

4) Defendant William Spiller was at all relevent times an Intec officer at Menard Corr. Center.

5) Defendant Shawn Gee was at all relevent times an Intec officer at Menard Corr. Center.

6) Defendant James Leek was at all relevent times an I.O.O.C. Investigator.

7) Defendant Kevin Reichert was at all relevent times an I.O.O.C. Intel Investigator.

8) Defendant Kevin Verble was at all relevent times an I.O.O.C. Investigator (Intel).

9) Defendant Kent Brookman was at all relevent times the chairman of Menards adjustment committee.

10) Defendant Jason Hart was at all relevent times an member of Menards adjustment committee.

11) Defendant Jacqueline Lashbrook was at all relevent times the warden of Menard.

12) Defendant John Baldwin was at all relevent times the Director for I.O.O.C.

13) At all relevent times the defendants acted under the color of state law.

14) the defendants are sued in their individual and official capacities.

Statement of Facts!

15) During the month of April 2017, and several months prior, plaintiff was incarcerated at Menard Corr. Center East Cell House - E-219 -.

16) Sgt. Murry was the assigned Sergent of this cell

3 of 43

House. During this time. On several occasions I have smelled alcohol on Sgt. Murry's breath. I have witnessed Sgt. Murry call prisoners racist names such as nigger, boy, and thug. During the winter months Sgt. Murry would direct his subordinates to open the windows and cut on the cell house fans while running shower lines.

17) Sgt. Murry routinely issued prisoners bogus disciplinary tickets. Myself, and based on information and belief, the vast majority of prisoners in the cell house filed grievances and complained to higher up prison officials about Sgt. Murry's actions. Those complaints fail on deaf ears.

18) Based on information and belief, in early April 2017, Sgt. Murry issued prisoner Eiroy Henderson #M20461 a bogus disciplinary ticket and dead locked (no movement) his cell for days.

19) Days later Sgt. Murry and his subordinates conducted a search of prisoners Henderson's cell and destroyed his legal documents commissary items, confiscated some of his personal property, and issued him another bogus disciplinary report.

20) Later that month on 4.23.2017, prisoners Eiroy Henderson #M20461, Mark Smith #M10356, and Deonta Davis #R27306 were engaged in a physical altercation with Sgt. Murry and other correctional officer on 6 gallery in the East Cell House-Menard.

21) As a result of this altercation, several Menard

prison Guards took these prisoners to menard Health care unit ano Beat them severely, Henderson unconcious resulting I him being Hospitalized (see Exh. 1 and 2 - Afiavits of mark smith & Elroy Henderson)

22) prior to January of 2018 plaintiff has Never had on conversation with Henderson or Smith (see Exh. 1 and 2)

23) On 4.25.2017, menard and Illinois Department of corr. Investigators conducted Mass Interviews of prisoners In the East cell House - MENARD.

24) Two (2) Investigators Interviewed me, James leek, and John Doe. I was Never advised of my miranoa warnings during this Interview.

25) Right off, these Investigators asked me what "Gang" was I In. I explained to those Investigators that I was not a Gang member. These Investigators stated to me that that was not true. the Investigators avered that the prisoners Involved In the 4.23.2017 Olter- cation with prison Guards were members of the four Cornor Hustler Security threat Group (S.T.G.) and that I was a member of the vice lord S.T. G.

26) these Investigators avered that those prisoners had talked to me prior to the altercation about assault- ing the prison Guards. these Investigators avered that I knew the assault was about to Go Down.

27) I explained to these Investigators that I had no In- formation about the Incident as It took place on 6 Gallery while I was In my cell on 2 Gallery. I further explained that I Did not even know two

of the three prisoners - Henderson and Smith - Involved In the Incident.

28) I Also told the Investigators that I thought It a mistake to make the Incident out to be a gang situation Because Sgt. Murry continuously Harrased the prisoners In the cell House.

29) the Investigators explained that they Knew all about the complaints against Sgt. Murry, But the problem was that three Guys from the same Gang Had took part In the Assault, and If I think that officers could be assaulted, and If I think that officers can be assaulted and nothing was going to be done about It then I was mistaken.

30) I repeatedly asked to cease the Interview and return back to my cell Because I had no Information on the situation. I was NOT Allowed to return to my cell when I asked, But Instead the Investigators tried to pressure me Into making false statements Implicating prisoners As having preplanned the assault on the Guards. Moreover, At the End of the Interview I was Allowed to return to my cell - E-219-.

31) once Back In my cell, my then cellmate Kevin Kurbey stated to me "man, spiller wants You Bad", according to my then cellmate, spiller offered him a prison Job and to be moved to FRONT STREET (less Restrictive part of the Jail) If he stated that I was the leader of the vice Lords, and that I had told him about the staff assault prior to It Happening.

6 of 43

my cellmate told me that he did not accept Spillers Offer.

32) the very next day - 4.26.2017, IntEc Spiller and Kevin Reichert came to my cell Handcuffed me, without giving me a chance to pack any of my property, and escorted me to an Interview Room In the School Building.

33) there I was meet by a third I.D.o.c. Investigator - Kevin Veeble who Identified Himself as being From the "Directers office" In Springfield.

34) this Interview proved to be even worse then the day prior as these Investigators took turns asking me Questions and Refused to allow me to leave when I Repeatedly Asked to Cease the Interview. I was not advised of my Miranda warnings During this Interrogation.

35) Like the day prior, I was accused of being a member of the vice Lord S.T.G. and Having Knowledge of a preplanned assault on SGT. Murry.

36) As I did the day prior, I Explained that this was not true. these Investigators would not accept this and took it a step futher and accused me of "Green lighting" the assault on SGT. Murry,

37) according to the Investigators they knew "Everything" - the Investigators averred that the prisoners Involved In the altercation could not have carried out the assault on SGT. Murry without first Getting approval From me.

38) When I questioned the investigators logic as to why would Henderson need approval from me to assault Sgt. Murry for things that Sgt. Murry had done to him. The investigators avered that the prisoners involved in the incident were members of the four corner hustlers and I "got it" for the Vicelords, and inmate (Robert Nimrod Hall #R00852 was the leader for the four corner hustlers.

39) The investigators explained that Nimrod was "talking" trying to "save his ass". According to Nimrod, explained the investigators, those prisoners had gotten the "greenlight" from me to assault the officers.

40) Kevin Verble explained to me that the matter was not just going to go away as the assault had gotten the attention of the news, the union, and officers and inmate had got hurt. And as a result, his boss wanted as many people as possible charged with a criminal case.

41) Kevin Verble told me that based on what Nimrod was telling them they had enough to charge me with a criminal case, but what I had working in my favor was that they already knew Nimrod was involved in the staff assault and that what he was telling them was a lie.

42) Kevin Verble told me that now was the time for me to help myself and all they needed to hear from me was that Nimrod told those guys to assault the guards or they could just go with what Nimrod

8 of 43

was telling them.

43) verble explained that he had ways to protect my Identity and that he could have me transferred to stateville (less Restrictive prison closer to my Home town chicago) If I cooperated.

44) Kevin verble explained that he had been In this buisness a long time and rarely did Inmates pass up the opportunity that he was Giving me.

45) verble told me that He Had a credit card and Every Inmate wanted Something. verble explained to me that He could Give me Just about anything I wanted besides my freedom. verble explained that He Had Been swiping his card alot In the past few Days

46) verble told me NOT to try to stick to Some kind of code Because Nimrod was trying to save himself verble explained to me that he WAS Giving me an out and Either I took It or the "Hammer" WAS going to come Down on me Including me going to administrative Detention or getting TRANSFERRED OUT of state.

47) Kevin verble Explained that I.D.O.C. could Do any thing that they wanted with me while I am In I.D. O.C. custody, verble explained that he was the person who had signed off on Every person to Go to tamms Corr. center.

48) verble told me that I could try and file an Grie- vance on the ticket I would Receive But I knew

9 of 43

that it would be denied.

49) I repeatedly told the investigators that I had no information about the incident and offer to take an polygraph examine to prove this.

50) Once it became clear to the investigators that I would not cooperate with them, Intel officer Spiller became angry telling me that he had taken the assault personally.

51) Spiller explained that they had given me a chance and I would regret my decision, but I had choosen my own fate and that I would be getting a new cell.

52) Robert Nimrod Hall, for his part, told me that the investigators were lying if they told me them things about him. Hall provided me an affidavit attesting that he never made "any verble written or signed statements" to Intel concerning me as to "gang activity or staff assault".

53) Robert Nimrod Hall futhur swore in his affidavit that "any documents that suggest otherwise has been fabricated by the Intel Unit". (See Exh. 3 Hall's Affidavit, Exh. 4 Hall's Affidavit)

54) After the interrogation, Intel officer Spiller informed me that I was going to North 2 Segragtion unit. Spiller informed me that I was being placed under "Investigation".

55) I also asked Spiller why was I going under Investigation, and Spiller responded "why do you think".

I asked Spiller to allow me to go back to my cell to pack my property and get an segragation kit (Basic Hygiene Items and change of underwear). Spiller stated to me that Your property will "catch up with You".

56) Spiller escorted me to North 2 Cell House and assigned me to cell 231 (Behind a steel door). I was left I this cell without any Hygiene products, sheets, Blankets, usuable mattress, or a change of underwear for at least one week. Also, for the first two days I did not have my Blood pressure medication or toliet paper.

57) During this time I was unable to Brush my teeth, properly wash my body and I had to sleep on a steel Bunk without a Blanket or sheets.

58) Consequently, I was sleep deprived and cold, I had Headaches due to the lack of sleep and my Body oder, my body aked from sleeping on the steel Bunk. I had no underwear where I had to dispose of the pair I had Because they were unclean. I felt Like I was being treated Like an animal and felt Humiliated and Became super depressed. I reached out to mental Health staff about my Issues.

59) I complained to several of the Guards assigned to my Gallery I was housed on But was told that either my property had not arrived to the cell House or Had not Been searched.

60) Also, several times I saw Intel officer Spiller and

complained to him about me not having my property. Spiller acknowledged that he knew I did not have my property but still did nothing to assist me in receiving my property.

60) About one week after I arrived in North 2 cell House, I was moved and assigned to cell 442 (behind the bars), due to the flood at Menard. It was at this time that I was able to get hygiene products by trading my food trays to the prisoners in the neighboring cells.

62) Despite the investigators claims to have information/evidence that I had knowledge and/or involvement in the planning of an assault on Sgt. Murry I was not issued an disciplinary report.

63) However, according to Illinois Administrative Code 504.30 (b), "If an employee observes an offender committing an offense, discovers evidence of its commission or receives information from a reliable witness of the conduct, the employee shall promptly prepare a disciplinary report".

64) Instead, I received an "Investigative Report" authored by Menard Intel officer Shaun Gee notifying me that I was being placed under investigation for "safety and security of the Institution" (see Exh. 4 - Investigative report)

65) However, according to Illinois Administrative Code 504.30 (d), "If an offender is suspected of committing an disciplinary offense" "an Investigative report shall

be issued that reasonably informs the offender of the subject of the investigation to the extent that safety and security allow".

66) Even though I was questioned extensively over two days surrounding the 4.23.2017 altercation, Intel office Gee investigative report failed to reasonably inform me whether I was under investigation for that reason.

67) Also, according to Ill. administrative code 504.50 (C) "An offender who receives an investigative report shall be interviewed by the reviewing officer in order to permit the offender an opportunity to present his or her views regarding placement in investigative status. The interview shall be conducted within 10 calender days after initial placement in investigative status".

68) During my time in investigative status— 16 days— I was never interviewed by a reviewing officer.

69) On 5.9.2017, I received a bogus disciplinary report authored by Intel officer Spiller charging me with 111: — Security threat Group or unauthorized organization leadership activity

70) that offense is defined as: " knowingly accepting assuming any leadership postion or postion of authority over other offenders in any Security threat Group or unauthorized organization, or pressuring, recruiting, organizing, authorizing or directing others to engage in Security threat Group or unauthorized organ-

13 of 43

"ization NOT Approved" (This Rule was Enacted on 4.1.2017)

71) TO substantiate ANY charge, Ill. Administrative Code 504.30 (c) (2)(4) (5) Requires the Reporting Employee to Include Information "to the extent Known or available" of the "place time and date of the offense", "a written statement detailing the conduct observed" and "the names of offenders, Employees and Visiters who were witnesses".

72) But In violation of I.D.O.C. codes and plaintiff's federal Right to proper Notice, As It pertains to plaintiff, Spiller's Disciplinary Report contain No Information As to what prohibited conduct plaintiff was allegedly engaged In. Nor did the Disciplinary Report cite to any witnesses to ANY prohibited conduct plaintiff allegedly engaged In.

73 Nor was there ANY mention In the Report that certain observed conduct was being withheld for Safety and Security reasons, which should have been If was the case.

74 Instead, Spillers Report offered bald assertions he claims came From 5 Confidential Sources that I was the "East cell House cheif Elite, the Highest RANKing Vice Lord postion". (See Exh. 6 Disciplinary Report)

75) The Names of those 5 sources that Spiller Used In the Disciplinary Report are Kevin "oreo" Kerby # R53246, Robert "Nimrod" Hall #R00852, Vernon "V-mac" McCormick # M09620, Marcel "Maybae" Brown #M21909, and JoAnis Bradly #R47472.

76) However, plaintiff HAS attached sworn affidavits From

Robert 'Nimrod' Hall #R00852 attesting that he never provided William Spiller or other Intel officers "Any verbel, written or signed statements concerning Any gang activity or staff assault concerning Lazerell Austin" (See EXH. 3), and that Spiller and other Investigators were trying to get him to fabricate statements against other prisoners. (See EXH. 4).

77) Moreover, Hall "Refused" to sign statement that Spiller and Kevin Reichart attributed to him (See EXH. 7 - Robert Halls Redacted statements).

78) Kevin 'Oreo' Kerby #R53246 was plaintiffs cellmate and told plaintiff that Spiller was trying to get him to make false statements In exchange for a prison Job If Kerby stated that plaintiff was a gang leader and had told him about the staff assault prior to It happening. But Kerby told plaintiff he Never told Spiller or any other Investigators anything about plaintiff.

79) Nor could he have because plaintiff Never told Kerby anything about an staff assault or gang activity, nor has Kerby ever observed plaintiff Engage In Any prohibited or Gang Activity.

80) Vernon 'V-mac' McCormick #M09620 Is an self-admitted Ganster Disciple who was a prison worker In Mennards East Cell House During the Relevent times, Plaintiff Has Never talked to McCormick about Any Gang Activity or Staff assault. Nor Has McCormick ever observed plaintiff Engage In Any prohibited or Gang Activity.

81) Marcel 'Mayhae' Brown #M21909 was an prison worker

In Menards East Cell House at the relevant times plaintiff has never talked to Brown about an staff assault or Gang activity. Nor has Brown ever observed plaintiff engage In Any prohibited or Gang activity.

82) Plaintiff does not even know who Joanis Bradley# R474472 Is and has never talked to him before in his life.

83) Important to point out, when the I.D.O.C. Investigator takes down an prisoner/witness statements It Is not written by the Interviewee, Nor Is It written Verbatim what the Interviewee stated Nor Do the Interviewee sign the statement — For Example, see Exh.7 —

84) the assertions of the 5 Sources are false.

85) To this point, plaintiff has attached sworn statements from Craig Comax (Exh.8) and Tommy Wilson (Exh.9) actual members of the vice Lord Organization Attesting to the Fact that there Is No Such leadership postion as a "chiefelite" of a cell House In their organization.

86) It follows that 5-Sources could not have Independently came up with the same Imaginary leadership postion.

87) In addition to the false Information, Spiller Report offered IRRelevent Information for the Sole purpose to prejudice plaintiff before the adjustment committee and other staff members.

88) Specifically, Spillers Report Noted that "multiple staff members were victims of a premediated assault by three affilates of the vice Lord S.T.G. the assault Resulted In Security staff Receiving Serious Injuries

Including Hospitalization" (see Exh. 6). This Information was Irrelevant As to whether or not plaintiff held a Leadership position.

89) On 5.16.2017, plaintiff went before the Menard Adjustment committee which was made up by two correctional officers - Lt. Brookman chairman, and Sgt. Hart -.

90) I pleaded Not Guilty and explained to the committee that I was not a member of the Vice Lords and that I held No Leadership position In that organization. I explained to the committee that the only Reason that I was written the ticket was because I refused to be an Informant and Lie on other prisoners as having been Involved In the Staff Assault.

91) I explained to the committee that the confidential sources Statements were false, and In violation of the administrative codes and my federal due process, the confidential sources assertions were not based on observed prohibited conduct, and I could Not defend against said assertion.

92) The adjustment committee chairman - Lt. Brookman acknowledged that the Report did Not contain Any prohibited conduct to Support the charge that I was a Gang Leader

93) Brookman stated, though, that he had to find me Guilty Because the officers were assaulted by "Your Guys" I explained to Brookman that I did not Even Know the prisoners Involved In the Incident and offered to take a polygraph Examine.

94) Brookman stated to me that If he dismissed the ticket

the WARDEN WOULD BE "DOWN MY BACK". The other ADJUSTMENT committee number - SGT. HART Noded his Head In agreement.

95) BROOKMAN STATED to ME "I tell You what I am going to do for You, I am going to only Give You SIX months"

96) In finding plaintiff Guilty, the ADJUSTMENT committee DID NOT INDEPENDENTLY INVESTIGATE OR Determine the Reliability of the confidential Sources.

97) Instead, the committee QUOTED Verbatim Spillers Discipl-INARY REPORT AS Its BASIC to find plaintiff Guilty. and Relied Solely on Some unspecified "verification" FRom spiller that the confidential Sources were Reliable (see EXH. 10 - ADJUSTMENT committee Summary).

98) But that WOULD have Been Impossible because Spiller Himself, In violation of plaintiffs Due process, Never Interviewed the confidential Sources he used In his Disciplinary Report. (See EXH. 11, spiller's Response to plaintiff Interrogatory.

99) Being that I had an Hearing on my Disciplinary Report on 5.16.2017, and after weeks of NOT Receiving the AD-Justment committee Summary, I began to ask the staff about the Summary Report Because without It I could Not file a Grievance/Appeal.

100) Spiller did a walk through on the unit that I WAS Housed on. I Asked Spiller why WAS It taking So Long for me to Receive my Summary Report and other Guys who had went before the Adjustment committee after me Had Already Received their Summary Report. I Asked Spiller could he See to It that I Received my Summary

report befer my time to appeal runs out.

(01) Spiller stated to me that "You will get Your Summary but I can tell You that You will be getting more than 6 months". Several other prisoners witnessed this exchange (See Exh. 12 Hector Cortez Affidavit, Exh. 13 Michael McGowen Affidavit, and Victer Reynold Affidavit Exh. 14)

(02) On 6.7.2017, Plaintiff received via inward mail, a copy of the adjustment committee Summary. Oddly, and in violation of I.D.O.C.'s administrative code, the adjustment committee members nor the warden had signed off on the Summary Report.

(03) Also, instead of the 6 months that the adjustment committee had promised, the Summary Report indicated that I received 1 Year accross the Board in Sanctions as spiller indicated I would.

(04) One day after I received the adjustment committee Summary, on 6.8.2017, I filed a Grievance challenging the disciplinary actions

(05) On 6.26. 2017, spiller returned the Grievance back to me which had been denied. I stated to spiller "I never had a Grievance denied this fast".

(06) spiller responded "officers were assaulted. what do You think was Going to happen".

(07) On 6.12.2017, I formally filed a Grievance complaining that the adjustment committee Summary Report, In violation of I.D.O.C.'s administrative code had not been signed by the committee members or the warden.

(08) I also complained that my sanction had been

19 of 43

increased beyond what the adjustment committee recommended in violation of the administrative codes.

(09) I also noted in this grievance that "I suspect that the Internal Affairs office and/or the warden disapproved of the 6 months and increased it to 1 year. This may explain why although I heard my ticket on 5.16.2017, but 6.7.2017 even the adjustment committee members had not signed the summary report. This may also explain how Intel Spiller knew about the 6 months even though he was not at the adjustment committee when I heard my ticket (See Exh. 15 Grievance).

(10) After filing that grievance, on 6.13.2017, counselor Hill during her counselor rounds gave me an entirely different summary report that contained signatures purportedly to be that of the adjustment committee members and the warden.

(11) However, the dates, times, and signatures did not add up so plaintiff filed a grievance ~~challenge~~ challenging the later summary report as being fraudulent (See Exh. 16 Grievance)

(12) In August of 2017, I saw the adjustment committee chairman Brookman and asked him why did he give me 1 year across the board when he told me he was only going to give me 6 months

(13) Lt. Brookman looked confused and stated to me "I did give you 6 months". I told him that my summary report indicated that the adjustment committee had given me 1 year. Lt. Brookman shook his head and stated "they must have changed it". When I asked him

20 of 43

who, He stated "You know who".

114) Subsequently to speaking to Brookman I went on a Hunger strike In efforts to get someone to look Into my unfair treatment.

(15) Specifically, How Had my sanction Been Increased and why was I housed on the administrative detention Wing and I Never Recieved an Notice or Hearing, Both In violation of I.D.O.C. administrative codes.

116) During my Hunger strike Intel officer SHAWN GEE Spoke with me. I explained to GEE that I was on Hunger strike because my segregation and other sanctions Had Been Increased Beyond what the adjustment committee Had Given me, and I Had Not recieved Notice or placement Hearing for me Being placed In administrative detention.

117) GEE Explained that He could NOT do anything about my Grievances Not Being properly addressed and I WAS NOT In administrative detention Even though, In violation of I.D.O.C. codes and policy, If I was Not I Should Not have Been Housed on the administrative detention wing around administrative detention prisoners under administrative detention Rules and Regulations.

118) As for the EXTRA 6 months In sanctions beyond what the adjustment committee gave me, GEE stated that "three officers were Hit, I Don't Know How He Gave you 6 months In the first place".

119) When I explained to GEE that according to the

Rules No one could Increase my punishment Beyond what the adjustment committee Had Given me, GEE told me that I was wrong and the warden could Increase It If she wanted to.

20) Administrative Detention placement:
On 5.10.2017, one day After I was ~~served~~ served the Disciplinary Report, and Even Befor I had an Hearing on the Ticket, Menard IYC officer McCarthy came to my cell (N2 442) and advised me to pack my property Because I was Being moved to the administrative Detention unit B wing.

21) on 5.26.2017, the warden J. Lashbrook did a walk threw on the administrative Detention wing. I stoped the warder to complain to her about the Bogus Disciplinary Report that I had Received and my placement In administrative Detention.

22) The warden asked to read my Disciplinary Report. After Reading the Disciplinary Report the warden stated to me "You had something to do with the assault". I explained to the warden that I had Nothing to do with officers Being assaulted and asked the warden If she could arrange for me to take an polygraph test.

23) the warden told me to file a Grievance. I Also asked the warden why was I on the administrative Detention wing As opposed to the Regular Segregation Galloreis. the warden Responded "my staff were assaulted".

24) But according to I.D.O.C's Rules the warden cannot put an prisoner In administrative Detention with—

out the approval of the Director or Deputy Director.

125) After months of being housed on the administrative detention wing under administrative detention rules and not having received an hearing I filed a grievance complaining that in violation of I.D.O.C. rules and my due process I was being denied notice and an hearing (see Exh. 16 Grievance)

126) Counselor Hill responded to the grievance noting that my status was disciplinary segregation and stated "placement is an administrative decision due to safety and security of the institution". - one reason that an prisoner may be held in administrative detention and in fact the rationale that was given to plaintiff when he finally received an administrative detention notice (see administrative detention notice - Exh. 17).

127) Still no closer to understanding why I had not been provided notice or a hearing, at that point I appealed to the grievance officer, that grievance was denied reiterating what the counselor stated.

128) But if I was not in administrative detention I.D.O.C. codes required segregation status prisoners to be housed in the designated segregation areas.

129) In Menard the designated segregation areas are 2, 4, 6, and 8 galleries in the North 2 cell house.

130) Also, during my time at Menard, any other time that I was in "investigative" or "disciplinary" status I was housed on either 2, 4, 6, or 8 gallery in the North 2 cell house.

(131) Also, during my entire time on B-wing the only prisoners that I ever observed on this wing were prisoners in administrative detention phase 1-3, or administrative detention segregation.

(132) So it was unusual for me, a prisoner from the general population, to be housed on the administrative detention unit simply to serve my disciplinary segregation time. And, as noted above, I was assigned to the administrative detention wing even before I had a hearing on the disciplinary ticket.

(133) Acting in conspiracy and out of retaliation the defendants circumvented the rules and my constitutional rights by not labeling me administrative detention. But for all intended purposes and in practice treating me like I was in administrative detention.

(134) By not labeling me administrative detention, plaintiff would be subjected to more restrictive conditions for a longer period of time.

(135) For example, if plaintiff had been labeled administrative detention at the time he was placed in administrative detention unit, by the time plaintiff would have completed his disciplinary segregation term he would have been in phase 3 with more priviledges.

(136) On 11.3.2017 Intel. officer McCarthy came to my cell at about 7:00 AM and informed me that I was being transferred to Pontiac corr. center — Pontiac corr. center is an disciplinary prison which houses mainly disciplinary and administrative segregation prisoners.

137) I asked McCarthy why was I being transferred on a friday as oppose to the regular TRANSFER DAYS. McCarthy Replied that as many Grievances that I file He thought I would be happy to be transferring.

138) At the time that plaintiff was transferred to Pontiac C.C. plaintiff had about 6 months left on his Disciplinary Segregation term.

139) When plaintiff arrived at Pontiac He was told that He was in administrative detention. I was assigned to the administrative detention cell House - North -

140) Due to the Retaliatory Disciplinary Report that Spiller Issued to plaintiff which acting in a conspiracy the Reward Adjustment committee found me Guilty of, plaintiff was Assigned to administrative detention By the Pontiac officials.

141) To be sure, the Rationale for plaintiff placement in administrative detention Relates back to the Bogus Disciplinary Report that Spiller Issued to plaintiff after plaintiff Refused to cooperate with him and other Investigator (See EXH. 17 administrative detention Notice).

142) plaintiff is currently still in administrative detention Here at Pontiac based on the same Rationale.

143) prolonged Segregation:
prior to plaintiff being unfairly targeted and arbitrarily punished He was mentally and physically Healthy. However, After being placed in segregation under Extremely oppressive conditions plaintiff's mental and physical Health has deteriorated.

144) To date plaintiff has been in uninterrupted segregation since 4.26.2017.

145) During this time plaintiff is confined to his cell most days for the entire 24 hours of the day. Plaintiff is allowed 8 hours a week yard and 3 - 10 minute showers a week.

146) Plaintiff meals are eaten in the cell. Plaintiff is not allowed to go to any religious services.

147) For the first 13 months of plaintiffs time in segregation plaintiff was not allowed to have an television or radio.

148) Also, due to the sanctions that menard adjustment committee imposed on plaintiff, I was restricted to spending 15 dollars a month on hygiene and stationary items only and even then strict limitations on the number of those items I can buy.

149) Consequently, plaintiff routinely ran out of soap and toothpaste and other hygiene and stationary items. Plaintiff would routinely trade his food trays for hygiene and stationary items.

150) Also, plaintiffs visitation privileges have been illegally restricted. For the first 18 months of plaintiffs segregation he was restricted to 2 none contact visits per month which each being no longer then one hour in duration.

151) During segregation visits, prisoners are handcuffed to a wrist chain and legshackled to a stool during the entire visit which is behind plexeglass.

152) Consequently, during this time plaintiff family refused

to visit Him (especially while At menard due to the long drive from Chicago to menard) only to be allowed on one hour visit none contact with plaintiff in Handcuffs and shackles.

153) In conjunction with the visit Restrictions, for the first 13 months of being in segregation plaintiff was not allowed to use the phone At Hl,

154) and over the following 6 months only 2 times a month with each call being No longer the 15 minutes.

155) Currently, plaintiff is only allowed 2 15 minutes phone calls a week.

156) Also, I am not allowed to Go to Religious Services and congregate with other muslims which my Religion encourages.

157) Also, Because I am in segregation the Hours that I am allowed yard is Restricted. But due to menard's policy for Segregation prisoners I was effectively Denied Yard.

158) Specifically, menard Does Not allow Segregation prisoners to wear Hats, thermals, sweater, Gloves or coat In any Season Besides winter. So for Example In the fall If It Is 25 degrees outside plaintiff would not be allowed to dress accordingly.

159) At pontiac, Segregation Yard Is Held In an one man Cage. When I first arrived At pontiac I was warned by other administrative Segregation prisoners that we (administrative detention prisoners) were the main targets by other prisoners to be "wrapped up" (Assaulted with Human waste) and the cell House Lt. purposely puts

us in the yard cages next to the "bugs" (prisoners who are most unruly).

(60) Also, Pontiac segregation yards do not have portable potties and it is against the rules to urinate in the yard cages.

(61) In spite of this plaintiff was still going to the yard cages.

(62) Sicking, plaintiff personally witnessed a prisoner rob another prisoner - using feces and urine as a weapon - for his shoe strings and watch and then throw waste on him.

(63) on 6.17.2018 while plaintiff was in the yard cages he had to urinate badly. Plaintiff yelled for the officer in the tower so that I could be allowed to use the restroom, the officer did not respond.

(64) Consequently, plaintiff had to urinate in the yard cages. this is when the prisoner in the cage next to me started throwing urine and feces on plaintiff which he had in a milk carton.

(65) During the assault plaintiff was running to one end of the cage to the other trying to escape the assault. No officer came to the yard until yard was over. which was at least on hour after I was assaulted.

(66) Due to plaintiff being in segregation any time that plaintiff leaves his cell while at Menard and Pontiac He must submit to an very intrusive and humiliating strip search

(67) Specifically, plaintiff must get completely naked

Handing each items of his clothing to the officers to be searched, then plaintiff must lift his hands in the air, then put his fingers in his mouth and pull his jaws apart, stick out his tongue, lift his top then botton lip, grab his penis and seperate it from his testicals, turn around, lift each of his feet one at an time, then bend from the waist and pull his buttocks apart so the officer can get an visual inside of plaintiff anus. After all of this, plaintiff is not allowed to leave the front of his cell to wash his hands.

(68) Also, because plaintiff is in segragation He must be hand cuffed and leg shackled Any time befor leaving his cell.

(69) As a result of being routinely placed in handcuffs and leg shackles for prolonged amounts of time plaintiff shoulder, wrist and ankles are badly.

(70) plaintiff Has permanot scars on his ankle and wrist from the Handcuffs and leg shackles.

(71) Also, In the segragation cell House, most prisoners are subjected to the same extreme conditions that I am.

(72) many of these prisoners resort to kicking and beating on the doors, and screaming and yelling. Literally, there is not a second of Quiet time In this environment.

(73) consequently, plaintiff cannot concetrate or Hold an thought. It is very dificuit to rest or sleep In this environment, this cause plaintiff Headakes and great

to his mental health problems.

174) Also, In the Segragation cell House At Menard and pontiac, the observation light stays on almost All DAY. and It is against the Rules to cover the light or your face.

175) In the segragation cell House At Menard and pontiac, unlike Any other cell House plaintiff Has ever Been Housed At, O.C. pepper spray Is often used.

176) Here At pontiac every single Day, often times, multiple times a DAY.

177) the effects of the pepper spray Is so strong that It lingers In the air. It causes plaintiff Eyes to Burn, my Nose to Burn, my throat to Ich, causing plaintiff to sneeze and cough, and cause plaintiff Skin to Ich and Burn.

178) Also, plaintiff allowed property Is Heavily Restricted.

179) plaintiff Is not Allowed to use the Institutional law Library But Instead must write Requests and Send them threw the Institutional mAil System

180) plaintiff Has Been In UNInterrupted Isolation since 4.26.2017. this Has caused plaintiff mental Health to Deteriorate.

181) As a Result of this Isolation under Extreme conditions plaintiff has Been Diagnosed with several mental Illnesses and has Been proscribed powerful psychotropic medication. (See ExH. 18 Administrative Detention/Disciplinary Seg. Review form Noting mental Health concerns)

182) Exhaustion of administrative Remedies:
To the Extent that the Grievance process was available

to plaintiff He exhausted with respect to all claims.

(83) Claims for relief:  [NOTE: plaintiff Is following the designated order of the counts that the court set out]
count(1) Retaliation
Defendants william spiller, Shaun Gee, James Leek, Kevin Reichert, and kevin weede Retaliated against plaintiff By placing plaintiff In Investigative and administrative segregation At menard because plaintiff Refused to cooperate with them and falsely Inform on other prisoners.

(84) conspiracy & Retaliation (Amended)
Defendants william spiller, Shaun Gee, James Leek, Kevin Reichert, Kevin weeble, and Jacqueline Lashbrook acting In a conspiracy placed plaintiff In menards administrative detention In retaliation for plaintiff refusing to falsely Inform on other prisoners

(85) the defendants shared Intent can be Inferred by the fact that everything that the defendants who Interviewed plaintiff on 4.25.2017 and 4.26.2017 told him would happen If He did NOT cooperate with them actually happened to plaintiff.

(86) As plaintiff pointed out, against all of I.D.O.C. Rules and codes the defendants assigned plaintiff to the administrative detention unit under administrative standards without ever giving plaintiff notice or Hearing. and to get around not having to provide plaintiff with the due process offered By the administrative codes the defendants only Labeled plaintiff disciplinary segregation.

187) the defendants intent can futher be Inferren by the fact that even befor plaintiff had a Hearing on his Disciplingry Report and befor he was found quilty or sentuced to Any segregation time the defendants had already assigned him to the administrative detuition unit.

(88) and when plaintiff spoke to warden lashbrook and complained about the retaliation and being arbitrarily placed In administrative detoiton, she Indicated that plaintiff file a Grievance, and when plaintiff Grieved these unusal occurence the warden response was that plaintiff was properly placed. (See EXH. 19 lashbrooks response to plaintiffs letter to director baldwin) and that the decision to place plaintiff on the administrative unit was due to safety and security (See EXH. 17- Grievance)

189) defendant John Baldwin Is Liable for these defendents action where plaintiff put him on Notice threw Several letters-which he simply fowarded to warden lashbrook (See EXH. 19) of the constitutional violations and he had authority and a duty to rectify but Did Nothing.

190) count 2   Retaliation - Due Process violation
Defendants william spiller, Shawn Gee, James leek, Kevin Reichert, and Kevin verble Retaliated against plaintiff By Issuing plaintiff a false Disciplinary Report In violation of his Due process Rights under the fourteeth Amendment.

191) Individual and conspratorial Denial of Due process/Retaliation. (Amended)

Defendants, William Spiller, Shaun Gee, James Leek, Kevin Reichert, Kevin Verble, and Jacqueline Lashbrook, Individually and acting In a Conspiracy denied plaintiff Substentive and procedural due process when they issued plaintiff a bogus Disciplinary Report out of retaliation for plaintiff Refusing to falsely inform on other prisoners.

(192) Kevin Reichert, one of the people who Interviewed plaintiff and threatened him with punitive actions after plaintiff Refused to cooperate, E-mailed Defendants Jacqueline Lashbrook, Kevin Verble, and William Spiller, and directed Intel. (Spiller) to Issue plaintiff an Disciplinary Report (See Exh. 20 E-mail)

(193) Spiller, In compliance with the E-mail but in violation of plaintiff's due process and I.D.O.C. rules, issued plaintiff an uninformative Disciplinary Report for being a Gang Leader based on Bald assertions, unsupported by any actual prohibited or unauthorized conduct, He claims came from 5 Inmate confidential sources (see Exh. 6)

(194) Without knowing what prohibited or unauthorized conduct plaintiff allegedly engaged In to give Rise to being charged with being an Gang Leader, plaintiff has zero chance of Defending himself.

(195) In further violation of plaintiff's due process, Spiller vouched for the credibility of the alleged confidential sources due to the consistency of their statements even though he himself never Interviewed them (see Exh. 12)

(196) So At the outset the Defendants knew that there was

No legitimate basis to issue plaintiff the disciplinary report.

197) Additionally, the bold assertions that plaintiff was the East cell house cheif elite, which spiller alleges came from 5 confidential sources, are false.

198) Specifically, plaintiff has attached sworn affidavits from Lomax (Exh. 8) and Wilson (Exh. 9) actual members of the Vice Lord organization attesting to the fact that there is no such leadership postion as a cheif elite of a cell house in their organization.

199) Moreover, plaintiff has attached 2 sworn affidavits from one of the alleged confidential sources - Robert Hall (Exh. 3 & 4) attesting to the fact that he never made any statements to spiller or any other investigators about plaintiff being a gang leader or having involvement in a staff assault, and any statements to the contrary that spiller or other investigators attributed to him are false.

200) Also, plaintiff has attached an redacted statement that Hall "refused" to sign that spiller and Reichert alleges Hall "substantially stated" (See Exh. 7.)

201) Kevin 'redo' Kerby, another alleged confidential source, was plaintiff's cellmate and told plaintiff that spiller was trying to get him to make false statements that plaintiff was a gang leader and had told him about the staff assault prior to it happening in exchange for a prison job.

202) But Kerby told plaintiff he never told spiller anything about plaintiff.

34 of 43

203) Nor could he, Because Plaintiff Never told Kerby any thing about an staff assault or gang activity, Nor Has Kerby ever observed Plaintiff engage In Any Prohibited or Gang activity.

204) Vernon 'V-mac' McCormick, another alleged confidential source, Is a self-admitted Gangster Disciple (an Rival to the vice Lords and likely would not know the Ranks of the vice Lords) was a Prison worker In Menards East cell House During the Relevant times.

205) Plaintiff Has Never talked to McCormick about Any Gang activity or Staff assaults, Nor Has McCormick ever observed Plaintiff engage In Any prohibited or Gang activity.

206) Marcel 'maybe' Brown, another alleged confidential Sources, Was Also an Prison worker In Menards East Cell House At All Relevant times.

207) Plaintiff Has Never talked to Brown about an Staff assault or Gang activity, Nor Has Brown ever observed Plaintiff Engage In Any prohibited or Gang activity.

208) JoAnis Bradley, another alleged confidential source, Is An Inmate who Plaintiff Does Not know Nor Has He talked to him.

209) This Indicates that Spiller and other Intel Investigators falsefies the alleged confidential sources statements. (NOTE: Defendants Identified the confidential sources In Documents that they produced to Plaintiff)

210) Important to Note, when Investigators takes Down a prisoner/witness statements It Is Not written BY

the Interviewee, Nor is it written verbatim what the Interviewee stated, But Instead what the Investigators feel the prisoner/witness substantially stated. Nor do the Interviewee sign the statements - (for example see EXH. 7)

211) Warden Lashbrook, for her part, aware at the outset that the Disciplinary Report was bogus, pressured the Adjustment committee to find Plaintiff Guilty of the Disciplinary Report, and then approved the actions of the Adjustment committee Even though From the face of the Disciplinary Report and the Adjustment committee Summary - which copied and pasted the Disciplinary Report as its Basis to find Plaintiff Guilty and Impose Sanctions - It was Clear that Wolf or I.D.O.C.'s Guidelines were Not followed.

212) Furthermore, Plaintiff put Warden Lashbrook on Notice threw conversations, multiple letters and Grievances of the Retaliation and Due process violation.

213) Count 3. Retaliation/Due process violation Defendants, Kent Brookman, Jason Hart, and Jacqueline Lashbrook Denied Plaintiff substantive and procedural Due process where they found Plaintiff Guilty of the Disciplinary Report Even though they knew the Report was false and written In Retaliation

214) Specifically, Plaintiff explained to the Adjustment committee members that the Disciplinary Report was false and written In Retaliation for Plaintiff Refusing to Cooperate with Spiller and other Investigators.

215) Defendant Brookman and Hart acknowledged that the disciplinary report did not contain any prohibited conduct to support the charge that I was a Gang leader but still found plaintiff Guilty citing presure from the Warden Lashbrook.

216) The adjustment committee In futher Violation of plaintiffs Due process, abandoned their Responsibility to Investigate and weigh the Reliability of the alleged confidential Sources, and Instead literally copied and pasted the Disciplinary Report As the Basis to find plaintiff Guilty and Sanction him. (See Ex.10 compare to Ex.6).

217) In addition to copiing and pasting spillers Disciplinary Report, the adjustment committee Relied on 'Verification' From Spiller that the confidential sources were Reliable.

218) But spiller Never Interviewed the Confidential Sources Himself.

219) Defendant Lashbrook approved All of these actions.

220) the Defendants futher Violated plaintiffs Due process because they were Required to Recuse them selves From Any decision making where they knew they were unable to Be fair and Impartial.

221) Count 10  ('amended) Due process violation - unconstitutionally Rule Defendants, John Baldwin, Jacqueline Lashbrook, William spiller, kert Brookman and Jason Hart, denied plaintiff Due process when they punished him pursuant to I.D.O.C's 111 Rule, which Is unconstitutionally Vague Because It Does not provide prisoners proper notice of what prohibited conduct constitutes a "know-

ingly accepting or assuming Any leadership position or position of authority over other offenders in any "Security threat Group or unauthorized organization".

222) Unlike the 2nd half of the Rule which states; "or pressuring, Recruiting, organizing, authorizing, or Directing others to Engage In Security threat Group or unauthorized organizational activities, meetings, or criminal actions on behalf of an organization Not Approved" and clearly lays out the prohibited conduct,

223) the first part Does not provide a prisoner of ordinary Intelligence Reasonable Notice of what conduct Is prohibited and constitutes "Knowingly accepting or assuming Any Leadership position or position of authority".

224) Because, the first half of the Rule Is Vague and Does Not Lay out specific conduct Which Is prohibited, the Rule allows plaintiff or Any other prisoner to be punished based on another prisoners Subjective Beliefs or personal Conceptions or a Frame Job.

225) Here, All that Was needed Was for a correctional officer to Simply allege that 5 Inmates Stated that plaintiff was assuming the Leadership position of the East cell House Cheif Elite without ever offering a single Incident In which plaintiff Engaged In Conduct that Broke Any Rule.

226) As plaintiff points out throwout his complaint, He Has Not Engaged In Any known prohibited conduct to give rise to being charged with being a Gang leader, and the Disciplinary Report Does Not Cite to Any.

38 of 43

227) Nonetheless, under this Rule, Plaintiff was charged and punished as being a Gang leader Based solely on the alleged assertion of 5 confidential Sources without ever knowing what prohibited conduct those assertions were Based on.

228) the first Half of the 111 Rule Is on Its FACE Unconstitutionally vague and was applied to plaintiff In a unconstitutional way. [NOTE: the court at merit Review stated that "the regulation Also clearly prohibits the conduct that plaintiff was accused of - Authorizing others to carry out an Attack on guards on behalf of a security threat Group" (Doc. 7 pg. 19). But the Disciplinary Report Never Accused plaintiff of the prohibited Acts of Authorizing others to carry out an Attack. the Information In the Disciplinary Report that other prisoners assaulted staff was wholly Irrelevant As to whether or Not plaintiff was assuming the leadership position As the East Cell House Cheif ELik which Is what plaintiffs Disciplinary Report alleged.] (See Exh. 6)

229) Count 11 8th amendment Violation/Retailation. Defendant William spiller Subjected plaintiff to conditions of confinement that deprived plaintiff of his BASic Human Needs where on 4.26.2017 spiller placed plaintiff In a Dirty cold cell without Any Blankets, sheets, cleaning Supplies, Hygeine products, usuable mattress, Toilet paper, Blood pressure medication, or change of underwear, and where After 7 Days plaintiff Had to Trade his food Trays to Get Hygeine Items.

39 of 43

230) plaintiff made spiller aware of his conditions and spiller having the authority and duty to rectify the situation instead did Nothing.

231) Spiller acted with the specific intent to punish and Humilate plaintiff In Retaliation for plaintiff Refusing to cooperate with him and other Intel Investigators. Spillers Actions caused plaintiff physical and Irreparable psychological Harm.

232) count 13  unconstitutional strip search policy Defendants John Baldwin, and Jacqueline Lashbrook Imposed upon plaintiff unnecessary and wanton Infliction of pain where they enacted and enforced an Blanket strip search policy on administrative segregation prisoners.

233) This policy violates plaintiff 8th amendment Rights to be free from cruel and unusual punishment where plaintiff has been forced to submit to an Degrading and Humiliating and quite Intrusive strip search Every time befor he leaves his cell.

234) these strip searchs are unneccessary where plaintiff Is Handcuffed behind his back and placed In leg shackles Every time befor Exiting his cell.

235) futher, plaintiff Is escorted by two officers and Remain In Restraints During All movement outside of the cell, the only exception being when plaintiff Is In the yard or the one man shower.

236) In those Instances plaintiff Is NOT unRestrained until He Is Secured In the yard or Shower.

237) this practice Is designed only to overly punish,

40 of 43

harass and humilate segregation prisoners and serves no legitimate penological purpose where the prisoners In protective costody and General population are not subjected to this same strip search policy and they are never restrained or escorted - two officers to one prisoners - while outside of their cell.

238) Also, those prisoners are In constant contact with other people and are much more able to transport contraband and/or physically assault another person. the defendents Actions caused plaintiff humiliation and psychological harm.

239) Count 14   8th Amendment violation/Excessive punishment Defendants, william spiller, Shawn Gee, James Leek, Kevin Reichart, Kevin Urble, Kent Brookman, Jason Hart, and JacQueline Lashbrook violates plaintiff 8th amendment right to be free from Excessive sanctions.

240) As a Result of the bogus Disciplinary report, plaintiff was sentenced to 1 year segregation and assigned to Administrative detention, 1 year C-Grade, and 1 year commissary Restrictions.

241) the segregation sentence mandated that plaintiff be confined to his cell all day for most days with the exception of 8 hours of yard per week In a one man yard cage, and 3 10-minute showers per week.

242) prior to being sentenced to segregation, plaintiff was allowed to walk to commissary, walk to the mess hall and eat, Go to Religious services, walk to the law Library, and allowed At least 13 hours of yard per week with

41 of 43

weights, BASKET BALL COURT, and other prisoners.

243) The segregation sentence Also mandated that plaintiff visits Be Restricted to 2 Noxle contact visits per month with each Being no longer then one hour per visit.

244) prior to segregation, plaintiff was allowed 5 contact visits per month with each Being up to 4 hours.

245) The Segregation sentence Also mandated that plaintiff Be strip search prior to leaving his cell, and Being hand cuffed and shackled during all out of the cell movement.

246) prior to Segregation, plaintiff did not have to submit to strip searchs Befor leaving his cell nor was he hand cuffed and shackled during out of the cell movement.

247) The C-Grade sanction mandated that plaintiff not being allowed to use the phone for an entire year, and Because I.D.O.C's rules mandate that prisoners due the same amount of time in B-Grade restrictions as C-Grade, the following year plaintiff was only allowed to use the phone no more then 2 times per month with each call Being no longer then 15 minutes.

248) prior to C-Grade, plaintiff was allowed access to the phone from 8:00AM - 10:00PM unlimited, each call Being up to 30 minutes.

249) additionally, Because of the C-Grade restrictions, plaintiff was denied all audio/visual privileges for an entire year.

250) additionally, Because of the C-Grade restrictions, plaintiff was restricted to spending no more then

42 of 43

251) 15 Dollars a month on Hygiene and stationary Items only, and even then strict limitations on the number of those Items a month. for example, only being allowed to buy 2 Bars of soap a month even In the summer months, and 1 tube of tooth paste a month.

252) and Because I.D.O.C Rules mandate that a prisoner Do the same amount of time In B-Grade Restrictions as C-Grade, the following year plaintiff was Restricted to spending no more then 30 Dollars a month on Hygiene and stationary Items only, with the same Restrictions on soap and tooth paste.

253) prior to C-Grade plaintiff was allowed to spend up to 100 dollars per commissary shop (3 times a month) on food Items and no Restrictions.

254) the totality of this punishment Is excessive and Disproportionate to the None violent Rule Infraction plaintiff was charged with violating.

255) moreover, the punishment Is Excessive to plaintiffs alleged culpability In the offese charges where plaintiff was Never accused In the Disciplinary Report or Basis for punishment of engaging In any prohibited conduct.

256) the defendants actions caused plaintiff physical and Irreparable psychological harm.

Wherefore, plaintiff Respectfully prays that this court enter Judgement Granting plaintiff:
A) Compensatory damages In an amount to be

Determined by a Jury.

B) punitive Damages In an amount to be determined
by a Jury

C) Nominal Damages

D) A Jury trial on All Issues Triable by a Jury

E) Plaintiffs cost In preparing, filing and prosecuting
this suit, with Interest.

F) Any other relief that this court deems Just,
proper, and equitable.

Respectfully submitted

Lazerik Austin #K77091

DATE

7.10.2019

P.O. Box 99

Pontiac Ill. 61764

Verification

I, LAZERIK AUSTIN, declare under penalty of perjury
that the matters Alleged In this complaint are TRUE,
Except As to matters alleged on Information and Be-
lief, and As to those, I Believe them to be TRUE.
I certify under the penalty of perjury that the
foregoing IS TRUE and CORRECT.
Executed At Pontiac Ill. on 7.10.2019

Lazerik Austin #K77091

## AFFIDAVITS

EXH. # 1

I Mr. Elroy Henderson state under the penalties of perjury that the following is true:

I Mr. Elroy Henderson am not nor have I ever been a member of or affiliated with the Viceloro organization. I was always or (used) to be ~~Man~~Ganster Disciple (but never was I). On 4-23-17 I was engaged in a altercation with the Menard Corr. Officers. I was severely beaten and tortured. I was issued a disciplinary report and charged with a criminal case for assault on certain staff (Corr. Officers) Recently I learned that Lazerek Austin #R77091 was given a disciplinary ticket in connection with the incident. Mr. Austin told me that he was interviewed by investigators and accused of having knowledge that me and other prisoners had preplanned to assault the officers on 4-23-17. This is completely false because even I didn't know that I would become engaged in a physical altercation with those officers. Furthermore, even though I was housed in Menard (East) cell house with Mr. Austin we did not socialize. I never spoke with Mr. Austin about assaulting any staff members. I agreed to give Mr. Austin this affidavits because it's the truth. I was not promised anything or threatened to give this affidavit. I also understand that this affidavit may be used in court proceedings and I am willing to testify to the statement made herein.

DATE: 01/26/18

/s/

NAME: Elroy Henderson
IDOC: M-20461
P.O. Box 99
Pontiac, IL. 61764

OFFICIAL SEAL
AMBER L. POTTS
Notary Public - State of Illinois
My Commission Expires 11/18/2019

01/26/18

State of ILLinois  } SS
County of Livingston  )

ExHi 2

Affidavit

I, Mark Smith #M10365 being first duly Sworn upon my oath depose and State that the following matters are both true and Correct made upon personal knowledge and belief, and if called as a witness, I am competent to testify thereto; On April 23, 2017 I was engaged in a physical altercation with Menard Correctional officer's In the East house. I was severly beaten as a result of this altercation, And then transfered to Pontiac C.C. later that day. Months later while in the West house at Pontiac C.C. I met Lazarek Austin #K77091 who told me investigators had accused him of having talked to me and other prisoners about assaulting certain Correctional officers. And accused him of telling me and other inmates to assault the Staff. This is completly false I've never talked to Austin #K77091 about assaulting Staff at Menard C.C. In fact me and Austin Never even Socialized at Menard C.C. and only saw each other in passing. Futher Austin #K77091 told me that investigators told him that I was a four corner Hustler, This is also false. I am not a Member of organization or Security Threat Group. I give this Affidavit because its true I havent been threatened or promised anything to give this Affidavit.

Subscribed and Sworn to
before me on the 21st day
of March, 2018

Notary Public

Respectfully Submitted

Mark Smith

OFFICIAL SEAL
AMBER L. POTTS
Notary Public - State of Illinois
My Commission Expires 11/18/2019

ExH 3

1 of 2

## Affidavit

I, Robert Hall #R00852, being duly sworn upon oath state that the following is true to the best of my knowledge and belief. And that the facts stated herein are of my own volition, and I am not under duress or any form of coersion.

On this date of August 29, 2017, the affiant is at present incarcerated within the I.D.O.C., Menard corr. center... and is one of several prisoners located on C-wing of the administrative detention unit, who've by many accounts, have been either targeted by the Intel-unit, written false/uncorroborated disciplinary reports, and /or arbitrarily biased at disciplinary hearings here at Menard.

For example, on or about April 24, 2017, I was interviewed by the Intel-unit staff - now L.T. Spiller, ; two members of the Springfield intel unit, who propositioned me to become a confidential informant on other prisoners, and moreso, & made threats that asserted that either I inform on others, or, I "take the hit". When I refused such a proposal, I was immediately met with retaliation in the form of three consecutive disciplinary reports which amounted to eighteen (18) months segregation, along with being placed on the Admin. Detention unit without prior notice, or so much as a hearing to this date.

Furthermore, the adjustment committee chaired by a L.T. Bookman is the furtherest thing from "fair and impartial"...where in my case, he (L.T. Bookman, Sgt. Hart) already had a predetermined decision of guilt before the hearing, where he declared "I don't know who you pissed off at I/A (intel unit), but I've got to find you guilty... file a grievance", all without so much as hearing my defense.

And this is a systemic, and acceptable practice, as the Chief Administrative Officer, Jacqueline Lashbrooke, has

2 of 2

turned a blind eye to, concurred with, and supported such actions as correct ... which only emboldens these two depart-ments to continue to violate my (prisoner's) rights without opposition from the warden.

Their actions gives prisoners the option to (a) become their informants, or lie on other prisoners; or (b) be punished via retaliation for not doing so.

I make this affidavit of sound mind, and, ready and willing to testify to the truthfulness of the above, if called to do so.

Sworn to before me on
this 31st day of August 2017

Alan W. S.
Notary Public

Affiant: /s/ Robert Hall-R00852
Robert Hall-R00852
P.o. Box 1000
Menard, IL 62259

OFFICIAL SEAL
SHANE W. GREGSON
Notary Public - State of Illinois
My Commission Expires 2/25/2019

EXH. 4

In the county of Livingston,
State of Illinois.

Affidavit

I, Robert Hall, R00852, state that the following is true and correct.

This affidavit is written in regards to an investigation that occured during April 2017, where I was interviewed by Lt. William Spiller and two investigators from springfield.

At no point during this interview did I give the investigators any Verbal, written or signed statements concerning any gang activity, or staff assaults concerning Lazarek Austin.

Any documents that suggest otherwise has been fabricated by the inted-unit investigators.

OFFICIAL SEAL
AMY B. WYKES
Notary Public - State of Illinois
My Commission Expires 11/18/2019

Amy B. Wykes

Robert Hall- R00852
Affiant

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**Offender Disciplinary Report**
Date: 4/26/2017

Menard Correctional Center
Facility

**Type of Report:**
☐ Disciplinary   ☒ Investigative

Offender Name:   AUSTIN, Lazarek                          ID #:   K77091

**Offense Information:**

Observation Date:   4/26/2017   Approximate Time:   7:00   ☒ a.m. ☐ p.m.   Location:   ECH/ Internal Affairs

**Offense(s):  DR 504:**   Investigation Status

**Observation:**  (NOTE: Each offense identified above must be substantiated.)  On the above date and approximate time, offender Lazarek AUSTIN K77091 is being placed on Investigative Status for the safety and security of the Institution. Offender AUSTIN was identified by identification card and O360. End of Report.

**Witness(es):**

☐ Check if Offender Disciplinary Continuation Page, DOC 0318, is attached to describe additional facts, observations or witnesses.

| S. Gee | 12477 | Signature | 4/26/2017 | 7:00 | ☒ a.m. ☐ p.m. |
|---|---|---|---|---|---|
| Reporting Employee (Print Name) | Badge # | | Date | Time | |

**Disciplinary Action:**

**Shift Review:** ☐ Temporary Confinement   ☒ Investigative Status   Reasons: Safety and Security of Facility

MAJ Childers 615                     MAJ Childers                    4-26-17
Printed Name and Badge #            Shift Supervisor's Signature            Date
                                    (For Transition Centers, Chief Administrative Officer)

**Reviewing Officer's Decision:** ☐ Confinement reviewed by Reviewing Officer   Comment:

☐ Major Infraction, submitted for Hearing Investigator, if necessary and to Adjustment Committee
☐ Minor Infraction, submitted to Program Unit

Print Reviewing Officer's Name and Badge #        Reviewing Officer's Signature        Date

☐ **Hearing Investigator's Review Required** (Adult Correctional Facility Major Reports Only):

Print Hearing Investigator's Name and Badge #        Hearing Investigator's Signature        Date

**Procedures Applicable to all Hearings on Investigative and Disciplinary Reports**

You have the right to appear and present a written or oral statement or explanation concerning the charges. You may present relevant physical material such as records or documents.

**Procedures Applicable to Hearings Conducted by the Adjustment Committee on Disciplinary Reports**

You may ask that witnesses be interviewed and, if necessary and relevant, they may be called to testify during your hearing. You may ask that witnesses be questioned along lines you suggest. You must indicate in advance of the hearing the witnesses you wish to have interviewed and specify what they could testify to by filling out the appropriate space on this form, tearing it off, and returning it to the Adjustment Committee. You may have staff assistance if you are unable to prepare a defense. You may request a reasonable extension of time to prepare for your hearing.

☒ Check if offender refused to sign

Offender's Signature                    ID#

Williams                        7662                    Signature
Serving Employee (Print Name)            Badge #

4-26-17                    710                    ☐ a.m. ☒ p.m.
Date Served                Time Served

☐ I hereby agree to waive 24-hour notice of charges prior to the disciplinary hearing.

Offender's Signature                    ID#

---

**(Detach and Return to the Adjustment Committee or Program Unit Prior to the Hearing)**

Date of Disciplinary Report        Print offender's name                    ID#

I am requesting that the Adjustment Committee or Program Unit consider calling the following witnesses regarding the Disciplinary Report of the above date:

| Print Name of witness | Witness badge or ID# | Assigned Cell (if applicable) | Title (if applicable) |
|---|---|---|---|

Witness can testify to: _____

| Print Name of witness | Witness badge or ID# | Assigned Cell (if applicable) | Title (if applicable) |
|---|---|---|---|

Witness can testify to: _____

Page 1 of  1

Distribution:  Master File
               Offender
               Facility (2)

Printed on Recycled Paper                    DOC 0317 (Rev. 2/2007)

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**Offender Disciplinary Report**

| Type of Report: | | | Menard | | Date: 5-9-17 |
|---|---|---|---|---|---|
| ☒ Disciplinary | ☐ Investigative | | Facility | | |

Offender Name: __Lazarek AUSTIN__          ID #: __K77091__

Observation Date: __5-9-17__   Approximate Time: __11:00__   ☒ a.m. ☐ p.m.   Location: __Menard Intel__

**Offense(s): DR 504:** __111: Security Threat Group Leadership Activity__

**Observation:** (NOTE: Each offense identified above must be substantiated.) This disciplinary report is being issued to offender Lazarek AUSTIN K77091 upon the conclusion of an internal investigation that was initiated on April 23, 2017. The investigation was initiated after multiple staff members were victims of a premeditated assault by three affiliates of the Vice Lord STG (offenders positively ID'd but names and numbers are being withheld for the safety and security of the institution). The assault resulted in security staff receiving serious injuries including hospitalization. As a result of the assault an investigation was initiated to identify any offender who may have ordered the assault, had prior knowledge, participated, or was holding a leadership position at the time of the assault. During the investigation offender AUSTIN K77091 was identified as the East cell house Chief Elite, the highest ranking Vice Lord position in the East cell house leadership structure. Offender AUSTIN was identified by 5 confidential sources as the East cell house Chief Elite (the names and numbers of the confidential sources are being withheld for the safety and security of the institution, but deemed reliable due to the consistency of their statements). The information obtained from confidential sources that offender Lazarek AUSTIN K77091 was the East cell house Vice Lord Chief Elite has been confirmed by Intel

**Witness(es):** _____

☒ Check if Offender Disciplinary Continuation Page, DOC 0318, is attached to describe additional facts, observations or witnesses.

| W. Spiller | 10397 | Signature | 5-9-17 | 11:05 | ☒ a.m. ☐ p.m. |
|---|---|---|---|---|---|
| **Reporting Employee (Print Name)** | **Badge #** | **Signature** | **Date** | **Time** | |

**Disciplinary Action:**

**Shift Review:** ☒ Temporary Confinement   ☐ Investigative Status   Reasons: __Nature of Offense__

__hilfur I__   __644__   Shift Supervisor's Signature   __5-9-17__
**Printed Name and Badge #**   (For Transition Centers, Chief Administrative Officer)   **Date**

**Reviewing Officer's Decision:** ☒ Confinement reviewed by Reviewing Officer   Comment: __I Concur__

☒ Major Infraction, submitted for Hearing Investigator, if necessary and to Adjustment Committee
☐ Minor Infraction, submitted to Program Unit

__Mark Childers__   __615__   Reviewing Officer's Signature   __5-9-17__
**Print Reviewing Officer's Name and Badge #**   **Reviewing Officer's Signature**   **Date**

☐ **Hearing Investigator's Review Required** (Adult Correctional Facility Major Reports Only):

_____

**Print Hearing Investigator's Name and Badge #**   **Hearing Investigator's Signature**   **Date**

**Procedures Applicable to all Hearings on Investigative and Disciplinary Reports**
You have the right to appear and present a written or oral statement or explanation concerning the charges. You may present relevant physical material such as records or documents.

**Procedures Applicable to Hearings Conducted by the Adjustment Committee on Disciplinary Reports**
You may ask that witnesses be interviewed and, if necessary and relevant, they may be called to testify during your hearing. You may ask that witnesses be questioned along lines you suggest. You must indicate in advance of the hearing the witnesses you wish to have interviewed and specify what they could testify to by filling out the appropriate space on this form, tearing it off, and returning it to the Adjustment Committee. You may have staff assistance if you are unable to prepare a defense. You may request a reasonable extension of time to prepare for your hearing.

☐ Check if offender refused to sign   _____   _____
                                      Offender's Signature                   ID#

_____   Badge # _____   ☐ a.m. ☐ p.m.   Signature _____
**Serving Employee (Print Name)**

Date Served _____   Time Served _____

☐ I hereby agree to waive 24-hour notice of charges prior to the disciplinary hearing.

_____   _____
Offender's Signature                   ID#

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

(Detach and Return to the Adjustment Committee or Program Unit Prior to the Hearing)

_____   _____   _____
Date of Disciplinary Report   Print offender's name   ID#

I am requesting that the Adjustment Committee or Program Unit consider calling the following witnesses regarding the Disciplinary Report of the above date:

| | | | |
|---|---|---|---|
| **Print Name of witness** | **Witness badge or ID#** | **Assigned Cell** (if applicable) | **Title (if applicable)** |

Witness can testify to: _____

| | | | |
|---|---|---|---|
| **Print Name of witness** | **Witness badge or ID#** | **Assigned Cell** (if applicable) | **Title (if applicable)** |

Witness can testify to: _____

Page __1__ of __2__
*Printed on Recycled Paper*

Distribution:   Master File
               Offender
               Facility (2)

DOC 0317 (Rev. 2/2007)

ILLINOIS DEPARTMENT OF CORRECTIONS

## Offender Disciplinary Continuation Page

EXH 6  2 of 2

Menard
Facility

☒ Disciplinary Report    ☐ Investigative Report    ☐ Disciplinary Summary    ☐ Adjustment Committee Summary

Report/Incident Date: 5-9-17                    Incident # (if applicable): _____

**Offender Information:**

| Offender Name: AUSTIN | ID #: K77091 |
| --- | --- |

Use the space below to provide any additional information.

staff based on consistent and reliable statements from sources as well as information/evidence obtained through an investigation conducted by IDOC staff. Based on the information obtained during the investigation, offender Lazarek AUSTIN K77091 is being issued a disciplinary report for 111: Security Threat Group Leadership Activity. He was identified by his state ID card and O360. End of Report.

Distribution: Master File
            Offender
            Facility (2)

Printed on Recycled Paper

DOC 0318 (Eff. 8/2006)
(Replaces DC 7212)

Exh. IV 1 of 2

**ILLINOIS DEPARTMENT OF CORRECTIONS**
Investigational Interview

Administrative Interview ☒

Criminal Interview

Type or Print all applicable information

Case Number: _____

Investigator: _____
Last Name          Badge #

f Incident: _____   Location of Incident: _____

of Investigation:

ify: _____

of Investigation: _____
Last Name                              First Name        MI     ID or Badge #

wee:
☐ Civilian   ☐ Employee   ☒ Offender (Incarcerated)   ☐ Offender (Electronic Detention)   ☐ Parolee

Hall          Robert          J     R00852
Last          First           MI    ID/Badge #

☐ White   ☒ African American   ☐ Asian   ☐ Native American   ☐ Hispanic   ☐ Other _____

☒ Male   ☐ Female   Age: ███████████

wee is a Civilian, Employee, or Parolee:

at: _____ as _____ for __/__
     Business or Facility          Position or Title          Years  Months

Regular days off: ☐ Mon ☒ Tues ☐ Wed ☐ Thurs ☐ Fri ☐ Sat ☐ Sun

ne #: (   )          Cell Phone #: (   )

yee: Union representation ☐ accepted or ☐ refused _____
presentation is refused by the employee, a signature shall be required.)     Employee Signature

wee is an Offender:
Menard          CC          Housing Assignment: E 6-12

iation with: _____          _____
              STG                        Nickname(s)

was conducted:

al Rights were read: ☒ No   ☐ Yes at _____   ☐ a.m. ☐ p.m.

Kershel   I St II
_____ Name and Title _____

JA Interview          on 4/24/17   at 9:30 ☒ a.m. ☐ p.m.
Location                   Date          Time

was concluded at: 10:40  ☒ a.m.

X   Refused                    [signature] 462
Signature of Interviewee        Signature of Interviewer

Spiller
Name of Witness if any          Signature of Witness if any

Austin v. Spiller, et al. (18-11152) IDOC Document No.: 000431
1 of 2

ILLINOIS DEPARTMENT OF CORRECTIONS
**Investigational Interview**
*(con't)*

2of2

| Interviewee: Hall L00852 | Case Number: |
|---|---|

The Interviewee substantially stated:



Distribution:    File

Exh. 8 7 of 2

## Declaration

I- Craig Lomax, ~~the~~ declare under the penalty of perjury that the following is true and based on my personal knowledge.

I have been knowing Lazerek, Austin for at least 25 years, since I've known the man. He has never been affiliated with the ViceLord organization. I was housed in Menard Correctional Center with Lazerek. While I was around Lazerek he never engaged in any security threat group (S.T.G.) activities. I can say this with certainty because I'am a member of Vice Lord organization and I had knowledge of the Vice Lord activities in Menade. Futhermore, there is no such Leadership position for the Vice Lord or organization as a Chief Elite of a institutional cell house. Also I can say with certainty that Lazerek is a Muslom.

Sincerely,
Craig Lomax #K-77112

Pg. #2

Cxll. #8
2of2

and continually tells me to leave Vice Lord organization and become a muslim. While I was house at pontiac with Mr. Austin he told me about the ticket he was written. I read the ticket and can honestly say that the ticket is based on lies and untruths, I give this declaration because it is true. I have not been promised anything or threat to give this affidavit. Also I am aware that this declaration may be used in a court proceeding, and if need be, I will testify to the statement that I made here. I again, I declare under the penalty of perjury that the statement that I made here in are true.

Sincerely
Craig Tomajo #K-77112
P.O. Box #99
Pontiac, Ill. 61764
3-6-18

STATE OF ILLINOIS }ss:
COOK OF LIVINGSTON)

EXH. 9
1 of 2

# AFFIDAVIT

I, Tommy Wilson, being first duly sworn on oath, do hereby depose and State under the penalty of perjury that all of the facts, statements and information contained in the below statement are true and correct to the best of My knowledge and belief:

I have known Lozerek Austin, for at least seven (7) years. I was in Menard Correctional Center with Mr. Austin for several years. And from the time that, I've known Mr. Austin, I could say with certainty that Mr. Austin is not a member of the Vice lord Organization.

I was in Menard Correctional Center during the year of 2017, until I was transfered out, and ship to the Pontiac Correctional Center on Thursday the 7ᵀᴴ of September 2017.
And from My knowledge of the activity of Vice lords in Menard Correctional Center. I can honestly say with certainty that Mr. Austin Never had a leadership, position. Or played any leadership Roll for the Vice lord Nation, during My Many years at the Menard Correctional Center.
And the reason that I could state this with certainty, because I am a member of the Vice lord Nation, and I was aware of the Vice lord Count in Menard, and for the record, There is "No" such position as a Chief Elite of a cell House. The nation would never allow anyone to call themselve a Chief Elite of a cell House. That is totally disrespectful to the members of the Vice lord Organization, and that's a position

(1).

EXH. 9 2 of 2

that would never be allow or TOLERATED.

Now while here in Pontiac, I saw Mr. Austin and he told me, that he was accused of being a Vice Lord, and having a Leadership position for the Vice Lords,

Now by me knowing there is no such position in the Vice Lord Nation as Chief Elite of a CELL House, and Mr. Austin not being a member of the Vice Lord Nation. I agreed to hand write this affidavit on Mr. Austin behalf because I know for a fact that this is totally fabricated about Mr. Austin being a Vice Lord, and holding a leadership position for the Vice Lord, Or being apart of any Vice Lords activities at the Menard Correctional Center.

And if ever call to court, I am willing to testify in court to the foregoing herein.

Now I am signing this affidavit of My own free will, and no one has threaten me to write and sign this affidavit, and I was never promise anything to make this Affidavit on behalf of Mr. Austin, or nor have anyone influence me to sign this affidavit.

Subscribed and Sworn to before
me this 20th day of February 2018

NOTARY PUBLIC

OFFICIAL SEAL
AMBER L. POTTS
Notary Public - State of Illinois
My Commission Expires 11/18/2019

/s/ TOMMY WILSON

(2).



# STATE OF ILLINOIS -- DEPARTMENT OF CORRECTIONS

## ADJUSTMENT COMMITTEE
## FINAL SUMMARY REPORT



| | | |
|---|---|---|
| **Name:** AUSTIN, LAZAREK | **IDOC Number:** K77091 | **Race:** BLK |
| **Hearing Date/Time:** 5/16/2017  09:01 AM | **Living Unit:** MEN-N2-B-04 | **Orientation Status:** N/A |
| **Incident Number:** 201700657/1 - MEN | **Status:** Final | |

| Date | Ticket # | Incident Officer | Location | Time |
|---|---|---|---|---|
| 5/9/2017 | 201700657/1-MEN | SPILLER, WILLIAM A | MENARD CORRECTIONAL CENTER | 11:00 AM |

| Offense | Violation | Final Result |
|---|---|---|
| 111 | Security Threat Group or Unauthorized Organization<br>*Comments:leadership* | Guilty |

| Witness Type | Witness ID | Witness Name | Witness Status |
|---|---|---|---|
| **No Witness Requested** | | | |

**RECEIVED**

**JUN 3 0 2017**

**ADMINISTRATIVE REVIEW BOARD**

## RECORD OF PROCEEDINGS

Inmate pled not guilty stated I'm not affiliated with the vice lords

## BASIS FOR DECISION

Based on the observation of the reporting employee an investigation was initiated after multiple staff members were victims of a premediated assault by three affiliates of the Vice Lord STG (offenders positively ID'd but names and numbers are being withheld for the safety and security of the institution). The assault resulted in security staff receiving serious injuries including hospitalization. As a result of the assault an investigation was initiated to identify any offender who may have ordered the assault, had prior knowledge, participated, or was holding a leadership position at the time of the assault. During the investigation offender AUSTIN K77091 was identified as the East cell house Chief Elite, the highest ranking Vice Lord position in the East cell house leadership structure. Offender AUSTIN was identified by 5 confidential sources as the East cell house Chief Elite (the names and numbers of the confidential sources are being withheld for the safety and security of the institution, but deemed reliable due to the consistency of their statements). Inmate ID by OTS sheet and state ID card.
Committee finds inmate guilty based on information provided and accepts the written report to be factual account of the incident and is satisfied the violations occurred as reported.
The adjustment committee finds the information provided by the confidential source to be reliable based upon verification from Intel SGT. Spiller
111 charge of security threat group or unauthorized organizational leadership activity found guilty by the committee by knowingly accepting or assuming any leadership position or a position of authority over other offenders in any security threat group or unauthorized organization; or pressuring, recruiting, organizing, authorizing or directing others to engage in security threat group or unauthorized organizational activities, meetings or criminal acts on behalf of an organization not approved pursuant to 20 ill. Adm. Code 445 or 450.1

## DISCIPLINARY ACTION  *(Consecutive to any priors)*

| RECOMMENDED | FINAL |
|---|---|
| 1 Year CGrade | 1 Year CGrade |
| 1 Year Segregation | 1 Year Segregation |
| 1 Year Commissary Restriction | 1 Year Commissary Restriction |

**Basis for Disciplinenature of offnese**

## Signatures
### Hearing Committee

| | Signature | Date | Race |
|---|---|---|---|
| BROOKMAN, KENT E  - Chair Person | | 05/16/17 | WHI |
| HART, JASON N | | 05/16/17 | BLK |

Recommended Action Approved

## STATE OF ILLINOIS -- DEPARTMENT OF CORRECTIONS
### ADJUSTMENT COMMITTEE
### FINAL SUMMARY REPORT

Name: AUSTIN, LAZAREK                 IDOC Number: K77091                 Race: BLK

Hearing Date/Time: 5/16/2017  09:01 AM     Living Unit: MEN-N2-B-04     Orientation Status: N/A

Incident Number: 201700657/1 - MEN           Status: Final

**Final Comments:** N/A

---

JACQUELINE A LASHBROOK / JAL  5/22/2017                                        05/22/17
_____                    _____        _____
Chief Administrative Officer                         Signature              Date

The committed person has the right to appeal an adverse decision through the grievance procedure established by Department Rule 504: Subpart F.

YVETTE BAKER                                       6/9/2017              01:00 PM
_____
Employee Serving Copy to Committed Person           When Served -- Date and Time

Lashbrook, or possibly Defendants Gee and Reichert, because of their roles in the investigative and decision-making process. I likely did not have conversations with any of the other named Defendants due to the chain of command and their roles in the process.

2) Dio You (spiller) personally Interview and/or Recurd ANY of the confidential sources statements that you used to Issue me the Disciplinary Report? If yes, which confidential sources Did you Interview? for Example, was It confidential source 1, 2, 3, 4, 5, or All of them.

**RESPONSE: I did not personally interview any of the confidential sources. I was present and witnessed the interview of one of the confidential sources. The confidential sources were not designated as "confidential source 1" or "confidential source 2" or any other identifying labels. Because the confidential sources were not given such descriptions, I am unable to identify which confidential source's interview I was present for.**

3) During what time Frame was I Identified As Accepting/Assuming the Leadership position of being the Vice Lord cheif elite of the EAST cell House?

**RESPONSE: You were identified following the staff assault on April 23, 2017.**

Respectfully submitted,

WILLIAM SPILLER,

Defendant,

KWAME RAOUL, Illinois Attorney General,

Attorney for Defendant,

By: _Megan A. Ditzler_

Megan Ditzler, #6318052
Assistant Attorney General

Megan Ditzler, #6318052
Assistant Attorney General
500 South Second Street
Springfield, Illinois 62701
(217) 782-2077 Phone
(217) 524-5091 Fax
Email: mditzler@atg.state.il.us

8x1 ①

Exhibit 12

## AFFIDAVIT

I CORTEZ, HECTOR. State that the folling is true. On or about 6/2/2017. I.A Officer Spiller Came on the wing and my celly LAZEREK AUSTIN # K-77091 asked Spiller why hadn't he got his Sumary from the adjustment comitte because he had heard his ticket weeks ago. Officer spiller told my celly that he would get his Sumary, but HE will not be 6 months. I declare under the Penalties of Perjury that what I stated in this affidavit is true.

Hector Cortez
Hector    Cortez
R-66371

RECEIVED

JUN 30 2017

ADMINISTRATIVE
REVIEW BOARD

EXH. ②



AFFIDAVIT OF MICHAEL McGOWAN

I, MICHAEL McGOWAN, being duly sworn and under OATH Hereby makes the following representation, I fully understand that these Representations are not of a confidential nature, and that these statements may be revealed to the courts or other interested parties, and that these Representations may be used against me if proven to be false.

1. My name is Michael McGowan, I'm over the age of 21yrs old. I'm also of full mind, body, and intelligence.

2. I'm incarcerated at the Menard Correctional center. Under the Sole Supervision of the Chief Administrative officer, Warden Jacquline A. Lashbrook, serveing a forty year sentence, For, First DEGree Murder, and Attempted, First DEGree Murder, Under a theory of (Accountability).

3. On or about the date of 6-2-17, Internal Affairs (Intel) SGT. Spiller came on (Annex) B-Wing in North 2 cell house, I heard Inmate Austin ASK SGT. Spiller About his Adjustment committee final Summary Report, Due to it taking a long time for him to recieve it. SGT. Spiller told Austin that he'll get his summary, but it want be Six Months.

Further AFFIANT Sayeth Not.                                    Respectfully Submitted

                                                      /S/ Michael McGowan #B12358
                                                      MENARD Correctional Center
SWORN TO ME ON THIS 7th day of June 2017.             PO Box. 1000

_____                             MENARD IL, 62259
NOTARY Public

OFFICIAL SEAL
SHANE W. GREGSON
Notary Public - State of Illinois
My Commission Expires 2/25/2019

I, Declare under the Penalties of Perjury that the Contents in this Affidavit is True

RECEIVED

JUN 3 0 2017

ADMINISTRATIVE
REVIEW BOARD

1 oF 1

ExH3

RECEIVED

JUN 30 2017

ADMINISTRATIVE
REVIEW BOARD

ON OR ABOUT 6/2/2017

Ŧ VICTOR. L. REYNOLDS ＃B 36538
NORTH 2 B-WING CELL B-3
DECLARE UNDER THE PENALTIES OF
PERJURY THAT ON OR ABOUT 6/2/2017
INTERNAL AFFAIRS OFFICER SPILLER
DID A WALK THROW IN. NORTH 2
B-WING. ON THIS DAY I HEARD
AUSTIN ＃K-77091 WHO AT THE
TIME WAS MY NEXT DOOR NEIGHBOR
NORTH 2 B-WING CELL B-4 ASK
SGT. SPILLER ABOUT IT'S TAKING
SO LONG FOR HIM TO RECIEVE HIS
ADJUSTMENT COMMITTEE SUMMARY, WHEN
HE HEARD HIS TICKET OVER 2 WEEKS AGO.
INTERNAL AFFAIRS OFFICER SPILLER REPLIED
THAT YOU'LL GET YOUR SUMMARY, BUT Ŧ
CAN TELL YOU YOU'LL HAVE MORE THAN
6 MONTH'S.

This is A TRUE ACCOUNT of THE
CONVERSATION I HEARD BETWEEN
AUSTIN ＃K-77091 AND OFFICER
SGT, SPILLER.

Ŧ. VICTOR. L. REYNOLDS ＃B-36538
UNDER PENALTY of PERJURY THAT THE FORGOING IS TRUE
AND CORRECT. VICTOR. L Reynolds ＃ B 36538

Subscribed and sworn to before me of this
7th day of June, 20 17

Notary Public

OFFICIAL SEAL
SHANE W. GREGSON
Notary Public - State of Illinois
My Commission Expires 2/25/2019

N2-B-04

EHX 15

ILLINOIS DEPARTMENT OF CORRECTIONS
**COMMITTED PERSON'S GRIEVANCE**

| Date: 6/15/2017 | Committed Person: (Please Print) LARGICK AUSTIN | ID#: K77091 |

| Present Facility: MENARD | Facility where grievance issue occurred: MENARD |

**NATURE OF GRIEVANCE:**

☐ Personal Property    ☐ Mail Handling    ☐ Restoration of Good Time    ☐ Disability    FRAUD!
☒ Staff Conduct    ☐ Dietary    ☐ Medical Treatment    ☐ Other (specify): _____
☐ Transfer Denial by Facility    ☐ Transfer Denial by Transfer Coordinator

☒ Disciplinary Report: 6 / 9 / 17      MENARD C.C.
     Date of Report           Facility where issued

Note:    Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
     Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
     Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
     Chief Administrative Officer, only if EMERGENCY grievance.
     Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary
     administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief
     Administrative Officer.

Brief Summary of Grievance: I Am WRiting this GRIevance DUE to Fraud by the MENARD ADJUSTMENT Committee MEMBERS, MENARD Chief Administrative Officer and Officer YVETTE BAKER. Concerning my ADJUSTMENT committee Summary.

On 6/9/2017, I filed a Grievance Challenging my confinement In Seg-regation. On 6/12/2017 I filed an ~~additional~~ additional Grievance about my confinement In Seg In the 6/12/2017 Grievance I specifically Challenged the fact that my adjustment Comm.ttee Summary was not Signed by the committee members or the Warden. I asked that that Grievance Be considered In addition to the Grievance that I filed

Relief Requested: to Expunge the proceedings and let me out of Seg. and Restore my privileges. thank you for your Time respectfully submitted

☐ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

| Largick Austin | K77091 | 6/15/17 |
| Committed Person's Signature | ID# | Date |

(Continue on reverse side if necessary)

---

**Counselor's Response (if applicable)**

Date Received: ___/___/___    ☐ Send directly to Grievance Officer    ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: _____

| Print Counselor's Name | Counselor's Signature | Date of Response |

---

**EMERGENCY REVIEW**

RECEIVED

Date Received: ___/___/___    Is this determined to be of an emergency nature?

JUN 30 2017

ADMINISTRATIVE
REVIEW BOARD

☐ Yes; expedite emergency grievance
☐ No; an emergency is not substantiated. Committed person should submit this grievance in the normal manner.

| Chief Administrative Officer's Signature | Date |

EXH. 15

ON 6/8/2017. the relief that I requested was to expunge the proceeding, let me out of seg and restore my privileges. See grievance and exhibits attached.

ON 6/13/207 Counselor Hill did her rounds on the Administrative Unit - North II B-Wing -. I gave Counselor Hill a grievance complaining about the retaliation that was being taken against me due to the staff assault that happen in the East House on 6/23/2017, and for me failing to cooperate with investigators and inform on other prisoners. On this same day counselor Hill gave me a copy of an adjustment committee summary. However on the summary that counselor Hill gave me, there were signatures from the adjustment committee members and the warden and the employee serving a copy to the committed person. See summary attached

This is flat out fraud because on the signatureless adjustment committee summary that I received on 6/7/2017, the run date is 6/6/2017. However, on the adjustment committee summary that I received from counselor Hill on 6/13/2017, the run date is 7/26/2017. Clearly the adjustment committee summary that counselor Hill gave me could not have been signed on the dates that it purports to show. To be sure, according to the 5/26/2017 summary, the warden signed off on the recommended actions on 5/22/2017. One of the actions recommended was 1 year C-Grade. But as late as 6/3/2017 I used the phone using my pin number (phone records will confirm this) furthermore, the officer working B-wing that day signed my name in the book to show that I was in grade and had used the phone on this date. Also, on 6/5/2017 I received a call pass for 6 of I and on 6/6/2017 I received a call pass for mental health. Those passes shows that on those dates I was in A-grade. But if the committee members and the warden truely signed that summary on the dates that it purports to show that they did, then no way would I have been able to use the phone on 6/3/2017. Nor would my call passes show me being in A-grade.

Also, to further illustrate the fraud, on the adjustment committee summary that I received on 6/7/2017. It indicates that I was served my summary on 6/9/2017 by a Yvette Baler. But this, of course, is impossible as the run date on that summary is dated three (3) days before the date it indicates that I was served my summary. And on the 5/26/2017 Summary, with the signatures, (the one given to me by counselor Hill) It fraudulently indicates that I was served my summary on 6/2/2017, a week earlier then the 6/6/2017 summary shows that I was served. I never was served a summary by Baler. It is clear enough that those signatures on the 5/26/2017 Summary came long after the day it purports to show. Perhaps to cover up an error and prevent me from prevailing on my grievances. I ask that this grievance be considered in addition to my 6/8/2017 and 6/12/2017 grievance

Bruce Rauner
Governor

John Baldwin
Acting Director



EXH 8

## The Illinois Department of Corrections

Menard Correctional Center
711 Kaskaskia Street • Menard, IL  62259 • (618) 826-5071 TDD: (800) 526-0844

**MEMORANDUM**

**DATE:**  6/22/17

**TO:**    L. Austin   K77091

**FROM:** Grievance Office, Menard Correctional Center  𝒟𝒟

**SUBJECT:**    Grievance(s) dated 6/15/17 Re: Allegations of Adjustment Committee Fraud

The attached is being returned for the reason(s) listed below:

Contact your Correctional Counselor. Per D.R 504 Grievances,  "A committed person shall first attempt to resolve incidents, problems or complaints, other than complaints concerning disciplinary proceedings, through his counselor".

Use proper Committed Person's Grievance Report Form (DC 0046).

Forward grievance direct to the Administrative Review Board. (protective custody, enforced medication, disciplinary reports from other facilities, decisions rendered by the Director, etc.).

Not submitted in the timeframe outlined in Department Rule 504; therefore, issue will not be addressed further.

Unable to determine nature of grievance/correspondence. Submit additional specific information.

Illegible copy submitted – submit legible copy for consideration.

Request restoration of GCC, segregation time cut, grade restoration to the Adjustment Committee. If request is denied, utilize the grievance process for further consideration.

X    Issue has been previously addressed on Grievance N°. 32-6-17.   No justification for further consideration.

Contact the Record office with your request and/or additional information (sentence calculations, jail credits, etc.).

Address concerns to Illinois Prisoner Review Board, 319 East Madison St. Suite A, Springfield, Illinois 62706 (executive clemency, parole violation issues, etc.).

This is to inform you that your Grievance was deemed a Non-Emergency by the CAO. Please follow proper procedure per DR 504 f Grievance Procedures for Offenders & AD 04.01.114 Local Offender grievance procedures.

Grievance was not completed prior to your transfer.  If this is still an issue, forward to the ARB.

X    Other:  There is no precedent to review the issue again. If you disagree with Grievance Officer's determination on Grievance No. 32-6-17, you may appeal to Administrative Review Board (ARB) in accordance with DR 504 guidelines.

# RECEIVED

JUN 3 0 2017

ADMINISTRATIVE
REVIEW BOARD

*Mission: To serve justice in Illinois and increase public safety by promoting positive change in offender behavior, operating successful reentry programs, and reducing victimization.*

www.illinois.gov/idoc

EXH #6
1 of 4

ILLINOIS DEPARTMENT OF CORRECTIONS
RESPONSE TO OFFENDER'S GRIEVANCE

| Grievance Officer's Report | | |
|---|---|---|

**Date Received:** July 20, 2017     **Date of Review:** July 21, 2017     **Grievance #** (optional): 97-7-17

**Offender:** Austin, Lazerck        **ID#:** K77091

**Nature of Grievance:** Administrative Detention Hearing Notice

**Facts Reviewed:** All information submitted to the Grievance Officer by the offender or institutional staff pertaining to this issue(s) being grieved has been thoroughly reviewed. Offender submitted two (2) grievances on Administrative Detention hearing issues. Both are combined in this response.

#1 grievance dated 7-13-17 and grieves he has not been provided with an administrative detention placement hearing. He was placed on B Wing in AD status 5-10-17 and as of 7-13-17 has not been given notice of hearing on his placement.

Relief requested: Given notice of placement.

Counselor replied you are currently in disciplinary segregation status until 4-26-18. Placement is an administrative decision.

#2 grievance dated 7-19-17 offender grieves his issue was not resolved by the Counselor.

Offender is advised Per DR 504F, offenders are to forward the original grievance with the Counselor reply on it if they feel their issue has not been addressed. That is all that is needed for official grievance reply. Offender should not write another grievance stating he does not agree with the Counselor.

Offender is currently DISCIPLINARY segregation status, not Administrative Detention (AD) status. Cell placement is an administrative decision. All offenders are screened and housed where determined appropriate. Offender is aware of his current "disciplinary status" as he has previously submitted a grievance regarding the disciplinary report resulting in this current disciplinary status. Offender was general population housed in the East Cell House until he was placed in North Two on investigative status on 4-26-17. Offender was subsequently issued a disciplinary report which was heard on 5-16-17, resulting in offender being "disciplinary" status on this date. Placement/cell location is an administrative decision.

**Recommendation:** Based upon a total review of all available information, it is the recommendation of this Grievance Officer that the inmate's grievance be DENIED. Offender is disciplinary status, not AD. Placement is an administrative decision. Issue addressed appropriately by Counselor.

Lori Oakley     Menard Correctional Center
Print Grievance Officer's Name        Grievance Officer's Signature
(Attach a copy of Offender's Grievance, including counselor's response if applicable)

| Chief Administrative Officer's Response | | |
|---|---|---|

**Date Received:** July 27, 2017     ☑ I concur     ☐ I do not concur     ☐ Remand

**Comments:**

Chief Administrative Officer's Signature           7/28/17
Date

| Offender's Appeal To The Director | | |
|---|---|---|

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must be submitted within 30 days after the date of the Chief Administrative Officer's decision to the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response, if applicable, and any pertinent documents.)

Offender's Signature        ID#        Date

Exhi. 2 of 4

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE**

N2-B-04

| Date: 7/13/2017 | Offender: (Please Print) KREREK AUSTIN | ID#: K77091 |
|---|---|---|

| Present Facility: MENARD C.C | Facility where grievance issue occurred: MENARD C.C |
|---|---|

97-7-17

**NATURE OF GRIEVANCE:**

- ☐ Personal Property
- ☒ Staff Conduct
- ☐ Transfer Denial by Facility

- ☐ Mail Handling
- ☐ Dietary
- ☐ Transfer Denial by Transfer Coordinator

- ☐ Restoration of Good Time
- ☐ Medical Treatment

- ☐ ADA Disability Accommodation
- ☐ HIPAA
- ☒ Other (specify): A.D. Hearing

☐ Disciplinary Report: ____/____/____
Date of Report                    Facility where issued

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

Summary of Grievance (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved): I AM writing this Grievance Because I have not been provided with a Administrative Detention Placement Hearing. ON 5/10/2017, I was placed in Administrative Detention on B-Wing. As of date, I have yet to Receive Notice or a Hearing on my placement In A.D.. This Is In Violation of Administrative Directive 05.12.101 which states In Relevant part: "Offender shall be afforded... a Placement Review If the offender may be subject to A.D. placement prior to the end of an offenders Disciplinary Segregation status". Futhermore, failing to Provide Me with Meaningful Notice of placement In A.D. at a meaningful

Relief Requested: To Be Given a A.D. Notice and a A.D. placement Hearing In accordance with Administrative Directives 05.12.101. or Immediately Released From A.D. thank You

☐ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

_Lozerek K Austin_
Offender's Signature

K77091    7, 13, 2017
ID#            Date

(Continue on reverse side if necessary)

RECEIVED
JUL 20 2017

---

**Counselor's Response (if applicable)**

| Date Received: 7, 17, 17 | ☐ Send directly to Grievance Officer | ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277 |
|---|---|---|

Response: You are currently in disciplinary Seg status until 4-26-18. Placement is an Administrative decision due to safety and Security of the institution.

_S. Hill_
Print Counselor's Name

Counselor's Signature

7, 17, 17
Date of Response

---

**EMERGENCY REVIEW**

Date Received: ____/____/____

Is this determined to be of an emergency nature?
☐ Yes; expedite emergency grievance
☐ No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

____/____/____
Date

Chief Administrative Officer's Signature

Distribution: Master File; Offender

Page 1

DOC 0046 (8/2012)

time, and a meaningful opportunity to be Heard In my Defense, denies me Procedural Due Process. See Hew. Π U. Helms 103 S.cT 864. See Also, Wilkinson U. Austin 125 S.cT 2384

Respectfully Submitted
Lajouk A.Bro #177091
B-04 - 7/13/2017

Exh. #16
4 of 4

#F 97-7-17

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**OFFENDER'S GRIEVANCE**

| Date: 7/19/2017 | Offender: (Please Print) LAZEREK Austin | ID#: 277091 |
|---|---|---|

| Present Facility: MeNGRO CC | Facility where grievance issue occurred: MeNGRO C.C |
|---|---|

**NATURE OF GRIEVANCE:**

- ☐ Personal Property
- ☑ Staff Conduct
- ☐ Transfer Denial by Facility

- ☐ Mail Handling
- ☐ Dietary
- ☐ Transfer Denial by Transfer Coordinator

- ☐ Restoration of Good Time
- ☐ Medical Treatment

- ☐ ADA Disability Accommodation
- ☐ HIPAA    About to
- ☑ Other (specify): Grievance office of Attached Grievance

☐ Disciplinary Report: _____/_____/_____
  Date of Report _____ Facility where Issued

Note:    Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
   Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
   Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
   Chief Administrative Officer, only if EMERGENCY grievance.
   Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary
   administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief
   Administrative Officer.

Summary of Grievance (Provide information including a description of what happened, when and where it happened, and the name or identifying information
for each person involved): I Am writing this Grievance Because my Attached Grievance
was not resolved by my counselor.
on 7/13/2017, I filed a Grievance Because although I was
placed in A.o on 5/10/2017, I have yet to receive notice for
placement in A.o. or a A.o Hearing. the counselors Responses Does
Nothing to Inform me of why I have not been given a Hearing
or Notice. I ask this Grievance office to Please correct this
Issue. Thank You.

Relief Requested: to Be Given A.o notice and a A.o Hearing in
Accordance with Administrative Directive 05.12.101 or Immediately
released from sec.

☐ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

_____ 277091   7, 19, 2017
Offender's Signature                        ID#              Date

(Continue on reverse side if necessary)    ·RECEIVED

| **Counselor's Response (if applicable)** | JUL 20 2017 |
|---|---|

Date Received: _____/_____/_____    ☐ Send directly to Grievance Officer    ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: _____

_____

_____

_____

_____

_____ _____ _____/_____/_____
Print Counselor's Name              Counselor's Signature              Date of Response

**EMERGENCY REVIEW**

Date Received: _____/_____/_____    Is this determined to be of an emergency nature?
- ☐ Yes; expedite emergency grievance
- ☐ No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

_____ _____/_____/_____
Chief Administrative Officer's Signature              Date

Distribution: Master File; Offender    Page 1    DOC 0046 (8/2012)

Illinois Department of Corrections

**Notice of Administrative Detention Placement Review**

## This document shall serve as notice of your upcoming review for placement in Administrative Detention by the Administrative Detention Review Committee.

| Austin, Lazarek | K77091 | Pontiac |
|---|---|---|
| Offender Name | ID # | Facility |

**Review Type:**

☒ Initial Review (Opportunity to be present)

☐ Follow-up Review:    ☐ Opportunity to be present

☐ File Review

**Review Date:** Your Administrative Detention Placement Review will take place on **4/19/18**                .

This review will be for:  ☒ Initial Placement in Administrative Detention;  ☐ Continued Placement; ☒ Transfer from Disciplinary Segregation.

**Notice of Administration Detention Placement Rationale**: In order to prepare you for your Administrative Detention placement review, you are advised that the Department's rationale for your prospective or continued placement in Administrative Detention is based upon the following reason(s):

Offender LAZAREK AUSTIN K77091 has been identified by the Intelligence Unit as being a member and leader within the Unknown Vice Lords STG. AUSTIN was recommended for Administrative Detention due to his willingness to participate and hold a position of influence within the Unknown Vice Lords. At Menard C.C. in 2017, AUSTIN was identified as being the highest ranking Vice Lord Leader in East Cell House and to have had prior knowledge of a major staff assault that led to multiple security staff members being injured. For the safety and security of this Department and it's staff AUSTIN, should remain isolated from the General Population until he can demonstrate he will not utilize his influence within the Unknown Vice Lords STG.

Copies of the following identified documents relied upon by Department administrators that may subject you to Administrative Detention Placement, or continued placement, are attached to the Notice; however, portions may have been redacted based upon a finding that disclosure would compromise security or safety:

**Description and Purpose of the Review:** Pursuant to Administrative Directive 05.12.101, offenders shall be afforded: initial Administrative Detention (AD) placement reviews, 90-day reviews of their on-going AD placement, and a placement review if the offender may be subject to AD placement prior to the end of an offender's disciplinary segregation status. Once placed in AD status, every offender will be subject to a 90-day review by the Administrative Detention Review Committee (Committee). You may appear personally in front of the Committee at their initial AD placement review and every 180 days thereafter, if applicable. If your upcoming review affords you the opportunity to personally appear, the type of review will be marked at the top of the form: "Opportunity to be present".

In practice, this means that once an offender is afforded the opportunity to personally appear at the Committee placement review, and if their placement in AD is continued, he or she will receive another file review (not in-person) by the Committee in 90 days. If placement in AD is continued at the time of the file

review, the offender will be afforded the opportunity to again personally appear at the next 90 day review. This sequence of 90-day reviews will continue as long as the offender is determined to be appropriately placed in AD status.    Administrative detention offenders who have received this notice of Committee placement review may submit written statements and documents two days in advance of the review.  If the notice is for the opportunity for an in-person review, the offender may also present written statements and documents to the committee two days in advance of the review, in addition to the opportunity to personally appear to provide oral statements.

At the time of your review, the Committee will examine if your placement in AD and your current Phase is appropriate and within the guidelines and considerations in Administrative Directive 05.12.101.    Upon conclusion of the review, the Committee will prepare a written report and recommendation concerning the review of your status to the Warden of your facility.  The Warden and/or Deputy Director will then approve or disapprove the Committee's recommendations and render a decision on your future placement and Phase status.  You will be informed in writing of the decision within 30 days of the Committee review date.

**I certify that I have received the attached Notice of Administrative Detention Placement Review on this date.**

_____          _____
Offender Signature                                                  Date

This section is only for offenders who are afforded the right to attend the review in-person at the top of this form and wish to waive their right to attend in-person at their review date:

"I hereby acknowledge my right to personally attend the in-person review and knowingly and voluntarily waive my right to appear.  I understand that I will be allowed to submit written statements and documents to the Committee for consideration two days prior to the review date but choose not to have the opportunity to personally attend and provide oral statements."

_____          _____
Offender Signature                                                  Date

☐ Offender refused to sign receipt

_____     _____     _____
Serving Staff Printed Name                       Serving Staff Signature                        Date

Date Delivered:    _____

Time Delivered:    _____    ☐ AM  ☐ PM

EXH.18

ILLINOIS DEPARTMENT OF CORRECTIONS

**Administrative Detention Review**

Pontiac Correctional Center
Facility

| | | | |
|---|---|---|---|
| Offender Name: Austin, Lazarek | ID Number: K77091 | Current Cell Assignment: N 814 | |
| Date of Review: 4/19/18 | Date of Last Review: | MSR Date: Life | |

Reason for Review: ☒ Initial Review   ☐ 90-Day Review   ☒ Disciplinary Seg. Review

Type of Review: ☒ In-Person Review ☐ File Review                Current Phase: ☐ Phase I   ☐ Phase II   ☐ Phase III

Factors Prompting Administrative Detention Placement:

☒ Safety & Security of Facility or Person          ☒ Behavior / Disciplinary History          ☐ Reports & Recommendations Concerning Offender

☐ Interviews & Submissions of Information       ☐ Maintaining Institutional Order       ☐ Seriousness of Offense                  ☐ Other

Comments: _____

Most Recent Segregation Placement: 5/16/17          Days/Months imposed: 1y          Segregation Release Date: 3/26/18

Has the offender received any Disciplinary Reports since the last Administrative Detention review?   ☐ Yes  ☐ No

If yes, list the charges and dates below and attach a summary of the charges

| Date: | Offense: | Comments: |
|---|---|---|
| | | |
| | | |
| | | |

Intelligence activity since last review: _____

Did the offender provide oral or written statements? ☒ Yes  ☐ No  ☐ Refused   Comments: _____

Are there any mental health concerns? ☒ Yes ☐ No
Are there any double celling concerns? ☐ Yes ☒ No
Are there any medical concerns?          ☐ Yes ☒ No

**Committee Recommendation:**

☒ Continue Administrative Detention          ☐ Return to General Population          ☐ Change in Phase          ☐ Change in Privileges

Comments: Recommend Placement

Justification for the above recommendation: _____

Signatures of Committee Members Present:

**Final Approval:**

CAO Disposition: ☒ I concur with the above recommendation          ☐ I do NOT concur with the above recommendation

CAO Final Disposition: _____

RECEIVED  4-20.18
Date

APR    4 2018

**Executive Approval** (Initial Placements Only):                Pontiac Correctional Center
Record Office
Director or Deputy Director Disposition: ☒ I concur with the above recommendation   ☐ I do NOT concur with the above recommendation

Final Disposition: _____

Director or Deputy Director Signature

Distribution:  CAO, Committee Chairperson, File,          Printed on Recycled Paper                DOC 0417 (Eff. 5/2014)
Deputy Director (Initial Placements Only)                                                        [Replaces DC 250-46282]

Austin v. Spiller, et al. (18-1152) Document No.:    000135

Bruce Rauner
Governor



$\mathcal{E}X\mathcal{H}/19$

John Baldwin
Acting Director

## The Illinois Department of Corrections

Menard Correctional Center
711 Kaskaskia Street • Menard, IL  62259 • (618) 826-5071 TDD: (800) 526-0844

# MEMORANDUM

DATE:    July 6, 2017

TO:    Lazerek Austin
K77091, N2-B-4

FROM:    Jacqueline Lashbrook, Warden
Menard Correctional Center

SUBJECT: Correspondence with Director's Office

I am in receipt of your correspondence addressed to the Director's Office dated 06/20/2017 regarding grievances and placement.  Your letter has been forwarded to my office for handling.

In review, it has come to my attention that all of your grievances concerning property, missing food items, and placement have been answered. It has been deemed that you are appropriately placed.

I trust this addresses your concerns.

Jacqueline Lashbrook, Warden
Menard Correctional Center

JL:rg

cc:    File
Austin K77091

*Mission: To serve justice in Illinois and increase public safety by promoting positive change in offender behavior, operating successful reentry programs, and reducing victimization.*

www.illinois.gov/idoc

**Spiller, Andrew W.**

| | |
|---|---|
| **From:** | Reichert, Kevin |
| **Sent:** | Friday, April 28, 2017 10:51 AM |
| **To:** | Verble, Kevin; Lashbrook, Jacqueline A. |
| **Cc:** | Thomas, Brad; Spiller, Andrew W. |
| **Subject:** | Hall R00852 - Menard staff Assault |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |

FYI, ALL of Menard went to level 4 status today.

I spoke with ▮▮▮▮▮ today and confronted him with the information that he had prior knowledge and his leadership status. ▮▮▮ stated he had stopped an assault prior to this one and he couldn't do it again (wouldn't be specific). ▮▮▮ stated he was tired of "Front Street" ▮▮▮▮▮ leaders sitting on their throne and using the "brothers" on back street to do their dirty work but when something really needed done they held them back. ▮▮▮ stated he wasn't the institutional leader but felt somebody needed to stand up for the little brothers against the front street ▮▮▮▮

At this point I believe Intel can go ahead and issue ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ IDRs for being leaders during a time of a serious staff assault. Intel needs to shift gears and start monitoring calls and see if there will be any peripheral issues moving forward.

State of Illinois - CONFIDENTIALITY NOTICE: The information contained in this communication is confidential, may be attorney-client privileged or attorney work product, may constitute inside information or internal deliberative staff communication, and is intended only for the use of the addressee. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify the sender immediately by return e-mail and destroy this communication and all copies thereof, including all attachments. Receipt by an unintended recipient does not waive attorney-client privilege, attorney work product privilege, or any other exemption from disclosure.

proof of service

I, LARENCE Austin, swear under the penalties of perjury that on July 10, 2019 I placed a motion for leave to file an amended complaint, a complaint. In pontiac mail system properly addressed to pontiac law library so that these documents can be e-filed to the united states district court for the southern district of Illinois - Austin J. spiller etal case# 3,18-cv-01152 NJR MAB -.

Lazell Austin #K77091
DATE   7. 10. 2019