IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **LAZEREK AUSTIN,**<br>**#K77091,** | |
| Plaintiff, | Case No. 18-cv-01152-SPM |
| v. | |
| **WILLIAM SPILLER,** *et al.*, | |
| Defendants. | |

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

This matter is before the Court on a motion to reconsider summary judgment filed by Plaintiff Austin pursuant to Federal Rule of Civil Procedure 60(b). (Doc. 199). Defendants did not file a response in opposition to the motion. For the following reasons, the motion is granted in part and denied in part.[1]

### MOTION TO RECONSIDER SUMMARY JUDGMENT

On September 7, 2022, the Court granted in part and denied in part Defendants' motion for summary judgment. (Doc. 187). Plaintiff is now proceeding to trial on claims of retaliation against Defendants Spiller, Gee, Leek, Reichert, and Verble (Counts 1 and 2). On January 23, 2023, Plaintiff filed the current motion to reconsider. Plaintiff argues that the Court (1) failed to apply the proper standard for granting summary judgment as to whether there was an implied agreement sufficient to satisfy a claim of civil conspiracy; (2) failed to consider the genuine issue of disputed facts in the record that there was evidence that Defendant Lashbrook knew of the Plaintiff's placement in restrictive housing in investigatory status; and (3) erred in finding that facts did not

---

[1] The motion to supplement and Plaintiff's additional arguments for reconsideration recently filed on June 16, 2023, will be addressed in a separate order. (*See* Doc. 214).

demonstrate that strip searches were conducted pursuant to a policy or at the direction of Defendants Baldwin or Lashbrook.

Plaintiff states that he is seeking reconsideration pursuant to Federal Rule of Civil Procedure 60(b), but he also references Rule 54(b) in the motion. Rule 60(b) provides relief from "a final judgment or order in a narrow set of circumstances," *Knowlton v. City of Wauwatosa,* No. 20-CV-1660, 2023 WL 2869846, at *1 (E.D. Wisc. Apr. 10, 2023) (citations omitted), while Federal Rule of Civil Procedure 54(b) grants the Court the discretion to reconsider interlocutory orders. In this case, there are still claims pending, and the Court has not issued a final order or judgment. "As such, the summary judgment order was interlocutory in nature and is not a final judgment or order under which Rule 60(b) applies." *Knowlton v. City of Wauwatosa,* No. 20-CV-1660, 2023 WL 2869846, at *1 (E.D. Wisc. Apr. 10, 2023) (citations omitted). The Court finds that Rule 54(b) is the proper mechanism for reviewing Plaintiff's motion.

Motions for reconsideration under Rule 54(b) generally serve "to correct manifest errors of law or fact or to present newly discovered evidence." *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987) (citation omitted). "Manifest error occurs where the court 'has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension.'" *Schmelzer v. Animal Wellness Ctr. Of Monee, LLC,* 2022 WL 3650675, at *1 (N.D. Ill. Aug. 1, 2022) (quoting *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990)). "Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996). *See also Ahmed v. Ashcroft*, 388 F. 3d 247, 249 (7th Cir. 2004).

I.  **Civil Conspiracy Claim (Count 1)**

Plaintiff first argues that the Court erred in its application of law as to whether there was

an implied agreement sufficient to satisfy a claim of civil conspiracy. Citing a Northern District of Illinois case from 1995, Plaintiff argues that civil conspiracy has a heightened level of scrutiny that the Court failed to apply. (Doc. 199, p. 5) (citing *Mauntel v. Briscoe,* No. 93 C 6579, 1995 WL 25298, at *7 (N.D. Ill. Jan 12, 1995)). Using this heightened standard, Plaintiff states that he has presented enough evidence for a jury to conclude that Defendants reached an agreement to violate his rights. He points out that he was interviewed "in concert, with several of [Defendants] stating (in the presence of the others) that Plaintiff would experience consequences if he refused to implicate himself or implicate others in the staff assault." (Doc. 199, p. 5). Additional, Plaintiff argues that according to the affidavits of other witnesses, these same investigators threatened other incarcerated individuals to provide false statements implicating Plaintiff.

Other than this single district case, the Court is not aware of a "heightened" level of scrutiny used to determine whether a civil conspiracy claim should survive summary judgment. As the Seventh Circuit has simply explained "[t]o survive a motion for summary judgment, [Plaintiff] needs to show evidence of an agreement among the conspirators to violate his rights." *Owens v. Evans,* 878 F. 3d 559, 565 (7th Cir. 2017). "[T]he alleged acts must be sufficient to raise the inference of mutual understanding (i.e., the acts performed by the members of a conspiracy are unlikely to have been undertaken without an agreement)." *Amundsen v. Chi. Park Dist.*, 218 F.3d 712, 718 (7th Cir. 2000) (quotation marks and citation omitted). Upon further review, however, the Court finds that Plaintiff has met his burden of putting forth facts, parallel conduct along with various comments from Defendants, from which a jury could infer that there was an agreement between Defendants to punish Plaintiff for not cooperating with the investigation. The summary judgment order is vacated in part to the extent summary judgment was granted in favor of Defendants Spiller, Gee, Leek, Reichert, and Verble as to the conspiracy claim in Count 1. The Court denies Defendants' motion for summary judgment as to Count 1 of civil conspiracy against Spiller, Gee, Leek, Reichert, and Verble.

##      II.      Failure to Intervene Claim Against Lashbrook (Count 1)[2]

Plaintiff also argues that the Court erred in finding that there is no genuine issue of material fact regarding whether Defendant Lashbrook knew of his placement in restrictive housing on investigative status in retaliation for refusing to cooperate with prison officials investigating the staff assault. He states that the Court did not address the fact that he had contact with Lashbrook and informed her that he had been placed in restrictive housing on investigative status in retaliation for refusing to cooperate with the investigation. (Doc. 199, p. 6) (citing Doc. 181, para. 88-89).

The Court, however, did address this conversation referenced by Plaintiff, which occurred on May 26, 2017. (*See* Doc. 187, p. 10). By the time that Plaintiff spoke with Lashbrook on this date, his housing status had changed. He was no longer being housed in restrictive housing on investigative status as a result of the alleged conduct of Defendants Spiller, Gee, Leek, Reichert, and Verble but in disciplinary segregation following a guilty finding by the Adjustment Committee. For a failure to intervene claim, it is not enough that Lashbrook had knowledge of a constitutional violation. She must also have a "realistic opportunity to prevent it." *Gill v. Milwaukee*, 850 F. 3d 335, 342 (7th Cir. 2017). As the Court previously found, because there is no evidence that Lashbrook had knowledge of the retaliatory placement on investigative status until after Plaintiff's status had changed, she did not have an opportunity to intervene and stop the retaliatory conduct of Spiller, Gee, Leek, Reichert, and Verble.

Plaintiff further argues that Defendants never raised an argument nor presented any facts in the motion for summary judgment showing that Lashbrook did not have knowledge of Plaintiff's placement in restrictive housing. Thus, the Court erred in granting summary judgment on this undisputed fact.

It is true that in the motion for summary judgment, Defendants only argued that because

---

[2] The claim against Lashbrook in Count 1 is that she failed to remedy Plaintiff's retaliatory placement in restrictive housing on investigative status. (*See* Doc. 85, p. 4).

Plaintiff failed to show that his placement on investigatory status violated his constitutional rights, Lashbrook was entitled to judgment as a matter of law on the failure to intervene claim since there was no underlying constitutional violation. (*See* Doc. 169). In his brief in opposition, Plaintiff pointed out that it was undisputed that Lashbrook was aware of his situation. However, he further argued that he had submitted evidence that she knew he "was being punished for an offense he had no involvement in." (Doc. 179, p. 9). In support of this argument, he cited to his affidavit discussing the May 26 conversation. (*See* Doc. 181, p. 6). Additionally, the May 26 interaction is the only communication mentioned between Plaintiff and Lashbrook provided in Plaintiff's statement of additional uncontroverted material facts. (*See* Doc. 181). Accordingly, Plaintiff has had a "meaningful opportunity to come forward with all of [his] evidence," regarding when and how Lashbrook received knowledge of his placement on investigative status, and the evidence presented does not demonstrate genuine an issue of material fact. *See Sublett v. John Wiley & Sons, Inc.,* 463 F. 3d 731, 736 (7th Cir. 2006).

That being said, to ensure that Plaintiff has had an adequate opportunity to brief the issue, Plaintiff is granted leave to file a supplemental brief setting forth any additional argument and evidence, not already addressed in the order on the motion for summary judgment (Doc. 187) or this order, as to whether Lashbrook had a "realistic opportunity" to prevent Plaintiff's retaliatory placement and housing in restrictive housing on investigative status by Defendants Spiller, Gee, Leek, Reighert, and Verble. If Plaintiff files such brief, Defendants shall have 7 days to respond. *See* FED. R. CIV. P. 56(f).

### III.   Unconstitutional Strip Search Policy Against Lashbrook (Count 13)

Plaintiff states that while in restrictive housing he was subjected to excessive and unnecessary strip searches in violation of the Fourth and Eighth Amendments. (Doc. 179, p. 13). Despite spending his days alone in a cell, every time he left his cell, a strip search was conducted in which he was required to touch his genitals and pull his buttocks apart so the officer could

visually inspect his anus. (Doc. 101-1, p. 8). Often, these strip searches were conducted in the view of other prisoners and staff. (Doc. 181-1, p. 8). Plaintiff claims that Director Baldwin and Warden Lashbrook created and/or condoned a strip search policy that was designed to punish, harass, and humiliate segregation inmates, and not for any legitimate penological purpose. (*See* Doc. 7, p. 22). The Court granted summary judgment in favor of Baldwin and Lashbook on this claim. The Court did not address Defendants' qualified immunity arguments and found that Plaintiff had failed to point to any evidence that the strip searches were performed pursuant to a policy implemented by Defendants. (Doc. 187, p. 19, 20).

Plaintiff's argument that the Court erred in this finding is well taken. There is evidence in the record that inmates in "administrative detention are subject to a strip search prior to leaving their cells," pursuant to an Illinois Department of Corrections policy. (*See* Docs. 74, 75). Upon reconsideration, the Court will vacate in part its summary judgment order and grant summary judgment only in part as to Count 13.

### a. Fourth Amendment

In the motion for summary judgment, Defendants argue that they are entitled to the protection of qualified immunity as to Plaintiff's claim that the strip search policy violated the Fourth Amendment. (Doc. 169, p. 20). "The doctrine of qualified immunity shields public officials who perform discretionary duties from liability and protects those 'who act in ways they reasonably believe to be lawful.'" *Lieberman v. Budz,* No. 03 C 2009, 2009 WL 1437609, at *8 (N.D. Ill. May 20, 2009) (quoting *Wheeler v. Lawson*, 539 F. 3d 629, 639 (7th Cir. 2008). To determine whether an official is entitled to qualified immunity, the Court must assess (1) whether a constitutional right would have been violated on the facts alleged, and (2) whether the right alleged to have been violated was clearly established. *Surita v. Hyde*, 665 F. 3d 860, 868 (7th Cir. 2011). "If either inquiry is answered in the negative, the defendant official' is protected by qualified immunity." *Koh v. Ustich,* 933 F. 3d 836, 844 (7th Cir. 2019) (internal quotations and

citations omitted).

Assessing the second prong of the inquiry, the Court finds that Lashbrook and Baldwin are entitled to qualified immunity. In 2020, the Seventh Circuit recognized that prisoners maintain "a reasonable expectation of privacy in their bodies with respect to visual strip searches," like the ones at issue in this case. *See Henry v. Hulett,* 969 F. 3d 769, 777 (7th Cir. 2020). Prior to the *Henry* decision, however, and specifically in 2017 when the alleged events occurred, "it was not clearly established law in this circuit that prisoners are entitled to the Fourth Amendment's protection in the context of a visual strip search." *Johnson v. Uherka*, 2022 2528124, at *3 (W.D. Wisc. July 7, 2022) (holding that the defendants were entitled to summary judgment on qualified immunity grounds for any strip search claim under the Fourth Amendment) *aff'd*, No. 22-2589, 2023 WL 3581963 (7th Cir. May 22, 2023). Therefore, Baldwin and Lashbrook have qualified immunity from suit based on the claim that the search policy violated Plaintiff's Fourth Amendment rights. Summary judgment is granted in part as to Count 13.

    b. **Eighth Amendment**

Plaintiff is correct that Defendants did not seek summary judgment on Count 13 to the extent the strip search policy violated the Eighth Amendment. Accordingly, summary judgment is denied in part as to Count 13.

### DISPOSITION

For the reasons stated above, the motion for reconsideration is **GRANTED in part** and **DENIED in part**. (Doc. 199). The Order ruling on the motion for summary judgment is **VACATED in part.** (Doc. 187). The Court **DENIES** summary judgment as to the Count 1 claim of civil conspiracy against Defendants Spiller, Gee, Leek, Reichert, and Verble. The Court **DENIES in part** and **GRANTS in part** summary judgment as to Count 13. Count 13 shall proceed against Baldwin and Lashbrook for enforcing a strip search policy that violated the Eighth Amendment. The Clerk of Court is **DIRECTED** to reinstate Defendants Lashbrook and Baldwin

as parties on the docket.

This action will proceed to trial on the following counts:

**Count 1:** Defendants Spiller, Gee, Leek, Reichert, and Verble individually, and in conspiracy with one another, violated the First Amendment by placing Austin in administrative segregation in retaliation for refusing to cooperate with prison officials' investigation of a staff assault, or by failing to remedy the illegal placement.

**Count 2:** Defendants Spiller retaliated against Austin in violation of the First Amendment and violated his due process rights under the Fourteenth Amendment by issuing him a false disciplinary report.

**Count 13:** Defendants Baldwin and Lashbrook subjected Austin to unconstitutional strip searches when they enforced a policy of strip searching all segregation inmates at Menard in violation of the Eighth Amendment.

By **June 27, 2023**, Plaintiff is granted leave to file a supplemental brief setting forth any additional arguments and evidence, not already addressed in the order on the Motion for Summary Judgment (Doc. 187) or this Order, as to whether Lashbrook had a "realistic opportunity" to prevent Plaintiff's retaliatory placement and housing in restrictive housing on investigative status by Defendants Spiller, Gee, Leek, Reighert, and Verble. (Count 1). If Plaintiff files such brief, Defendants shall have 7 days to respond. See FED. R. CIV. P. 56(f).

**IT IS SO ORDERED.**

DATED:   **June 20, 2023**

                                                 *s/Stephen P. McGlynn*
                                                 **STEPHEN P. MCGLYNN**
                                                 **United States District Judge**