IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **LAZEREK AUSTIN,** **#K77091,** | |
| Plaintiff, | Case No. 18-cv-01152-SPM |
| v. | |
| **WILLIAM SPILLER,** *et al.*, | |
| Defendants. | |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

On September 7, 2022, the Court entered an order granting in part and denying in part the motion for summary judgment filed by Defendants. (Doc. 187). Trial was set for February 27, 2023. (Doc. 192). Because of security concerns presented by a criminal trial being litigated in this district during the same time, the trial in this case was canceled and reset for July 10, 2023. (Doc. 207). On January 23, 2023, Plaintiff through court recruited counsel filed a motion to reconsider the summary judgment order. (Doc. 199). Defendants did not file a response in opposition to the motion. Then on May 25, 2023, Plaintiff personally filed a motion for leave to supplement the motion to reconsider. (Doc. 208). As Plaintiff is represented by counsel, the motion was stricken. (Doc. 209). Counsel then filed a motion supplement the motion for reconsideration on Plaintiff's behalf and resubmitted Plaintiff's supplemental arguments. (Doc. 214).

With trial quickly approaching, the Court ruled on the initial motion for reconsideration on June 20, 2023. (Doc. 215).[1] The Court informed the parties that the motion for leave to supplement and Plaintiff's additional arguments for reconsideration would be addressed in a separate order.

---

[1] Since the issuance of the Order on the initial motion for reconsideration, the trial date has been reset. (Doc. 220).

The Court also allowed Plaintiff to file a supplemental brief setting forth any additional arguments and evidence, not already address by the Court, as to the failure to intervene claim against Warden Lashbrook, Count 1.

The pending motion to supplement containing new arguments for reconsideration and the supplemental brief regarding the claims against Warden Lashbrook in Count 1 are now before the Court. Defendants have not filed response briefs in opposition to the motion to supplement (Doc. 214) or the supplemental brief (Doc. 221) filed by Plaintiff.

### SUPPLEMENTAL MOTION FOR RECONSIDERATION

As previously discussed by this Court, Federal Rule of Civil Procedure 54(b) grants the Court the discretion to reconsider interlocutory orders. Rule 54(b) generally serves "to correct manifest errors of law or fact or to present newly discovered evidence." *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987) (citation omitted). "Manifest error occurs where the court 'has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension.'" *Schmelzer v. Animal Wellness Ctr. Of Monee, LLC,* 2022 WL 3650675, at *1 (N.D. Ill. Aug. 1, 2022) (quoting *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990)). "Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996). *See also Ahmed v. Ashcroft*, 388 F. 3d 247, 249 (7th Cir. 2004).

Upon further review of the summary judgment briefings submitted by the parties, the Court finds that it is necessary to revise the Order on the motion for summary in order to correct errors of law and fact. Thus, for the reasons stated below, Plaintiff is allowed to supplement the motion for reconsideration, and the new requests for reconsideration are granted in part and denied in part.

I.  **Due Process**

Due process entitles prisoners to the following protections in disciplinary proceedings:

(1) advance (at least 24 hours before hearing) written notice of the claimed violation; (2) the opportunity to be heard before an impartial decision maker; (3) the opportunity to call witnesses and present documentary evidence (when consistent with institutional safety); and (4) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action.

*Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007) (quoting *Rasheed-Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir. 1992)). Plaintiff takes issue with three out of the four requirements, as ruled on by the Court in the Order granting summary judgment in part.

  a.  **Adequate Notice**

Plaintiff argues that the Court never addressed whether he lacked proper advanced notice of the claimed violation due to the contents of the disciplinary ticket issued to him by Defendant Spiller prior to the disciplinary hearing. (Doc. 214-1, p. 2). Plaintiff asserts that he was denied due process due to the manner in which he was informed of the Rule 111 charge against him. (*See* Doc. 179, p. 10). He states that the disciplinary ticket contains only Spiller's conclusory statement that Spiller was informed by five confidential sources that Plaintiff was the "East Cell House Chief Elite." Plaintiff argues that the disciplinary ticket does not offer any information as to the prohibited conduct or specific acts that Plaintiff engaged in to support these assertions. As a result of the lack of information, Plaintiff was unable to defend himself against the charge.

Due process requires that an inmate be given advanced "written notice of the charges…in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." *Wolff v. McDonnell,* 418 U.S. 539, 564 (1974). "The notice should inform the inmate of the rule allegedly violated and summarize the facts underlying the charge." *Northern v. Hanks,* 326 F.3d 909, 910 (7th Cir. 2003) (citations and quotation marks omitted). In the Order ruling on the motion for summary judgment, the Court observed that it was not in dispute that on May 9, 2017, Plaintiff

was issued a disciplinary ticket authored by Spiller charging him with a "Rule 111 violation, stating that [he] was the leader in the Vice Lord gang." (Doc. 187, p. 4, 14; Doc. 181-1, p. 5; Doc. 180, p. 4). Plaintiff signed the ticket, indicating that he received it on May 9. (Doc. 187, p. 4). The disciplinary hearing before the Adjustment Committee was held on May 16, 2017. (*Id.* at p. 5). While the Court focused its analysis on whether Defendants were impartial, it ultimately concluded that there was "no evidence to suggest that [Plaintiff] was not afforded the process he was due prior to his disciplinary segregation sentence." (*Id*. at p. 16).

The Court finds that the disciplinary ticket met due process requirements and will not modify the summary judgment Order based on the argument that Plaintiff did not receive constitutionally adequate notice of the charge against him. The disciplinary ticket was issued a week prior to the hearing before the Adjustment Committee and informed Plaintiff of the charge against him and summarized the facts underlying the charge. *See Whitford v. Boglino*, 63 F. 3d 527, 534 (7th Cir. 1995). According to the ticket, following the staff assault on April 23, 2017, an investigation was commenced in order to "identify any offender who may have ordered the assault, had prior knowledge, participated, or was holding a leadership position at the time of the assault." (Doc. 169-14). During the investigation, five confidential informants identified Plaintiff as the East Cell House Chief Elite, which is "the highest-ranking Vice Lord position in the East cell house leadership structure." The disciplinary ticket stated that based on the information that Plaintiff held a leadership position in a security threat group he was being charged with violation of "111: Security Threat Group Leadership Activity." (*Id.*). Thus, despite Plaintiff's contention, and as the Court previously stated, the disciplinary ticket included Plaintiff's alleged prohibited conduct – assuming a leadership position in a security threat group. (Doc. 187, p. 15). The Court finds that the information contained in the disciplinary ticket was sufficient to enable Plaintiff to prepare a defense, and there is no genuine issue of fact on this issue to present to the jury regarding the issue

of adequate notice. *See Ball v. Grams,* 337 F. App'x 566, 568-69 (7th Cir. 2009) (holding that the plaintiff was provided adequate notice where the "prison told [the plaintiff] whom he was accused of acting against (his former cellmate) and what offenses he was accused of committing (sexual acts and a batter)" without including dates and locations of the misconduct); *Sampson v. Davis,* 58 F. App'x 217, 219 (7th Cir. 2003) (holding that the plaintiff was provided adequate notice where the plaintiff received documents that informed him he was being charged with "rioting, code violation 103" and describing a riot that occurred without specifying the plaintiff's specific conduct during the riot).

In connection with his adequate notice argument, Plaintiff presents for the first time an argument that he was impeded from gathering evidence to defend himself because prior to the hearing was being held in restrictive housing and had limited communication privileges. (Doc. 214-1, p. 5). The Court will not consider this argument, as a party seeking reconsideration cannot introduce new evidence or legal theories that could have been presented earlier. *See Caisse Nationale de Credit Agricole*, 90 F. 3d at 1269.

b. **Impartial Decision Maker and Some Evidence**

Next Plaintiff seeks for the Court to reconsider its ruling that there was no genuine issue of material fact regarding the impartiality of Adjustment Committee Members Brookman and Hart and Warden Lashbrook. He argues that the Court failed to consider facts in a light favorable to him pertaining to Defendants' lack of impartiality and that a reasonable juror could conclude from the statements made by Brookman during the hearing that Defendants were going to find him guilty regardless of what he had to say, or the evidence presented at the hearing. (Doc. 214-1, p. 8-9). Plaintiff further argues that another evidence of bias is that Brookman told Plaintiff that he would receive a sentence of six months in disciplinary segregation, and he was ultimately punished with a year. Plaintiff points to Brookman's deposition in which he testified that he could have

changed his recommendation after talking with the warden. (*See* Doc. 169-2, p. 55-56). Finally, Plaintiff argues that the finding of guilt by the Adjustment Committee members was not properly supported by "some evidence." He states that the reliability of the confidential informants was never established, and the Adjustment Committee simply copied and pasted the contents of the disciplinary ticket as their basis for decision. (Doc. 214-1, p. 10-11, 13).

Upon reconsideration, the Court agrees that the record presents a genuine issue of fact regarding whether Defendants were impartial and whether their recommendation and disciplinary decision was supported by any evidence at all. The statements made by Brookman as asserted in Plaintiff's Affidavit – that he had to find Plaintiff guilty or he would be punished by Warden Lashbrook and that he would only give Plaintiff six months in disciplinary segregation but ended up recommending a year[2] – could suggest that he and Hart were influenced by Warden Lashbrook and biased in their decision making. (Doc. 181-1, p. 6).

Further, it does not appear that the decision of Brookman, Hart, and Lashbrook was supported by "some evidence." Here, the only evidence against Plaintiff was the testimony of confidential informants. (*See* Doc. 169-15). "A prison disciplinary board may rely on information from a confidential informant, but to satisfy due process the board must first find the informant reliable." *Ashby v. Davis,* 82 F. App'x 467, 471 (7th Cir. 2003) (citing *Whitford,* 63 F.3d at 535). Reliability can be established based on:

> (1) the oath of the investigating officer as to the truth of his report containing confidential information and his appearance before the disciplinary committee; (2) corroborating testimony; (3) a statement on the record that the chairman of the disciplinary committee that he had firsthand knowledge of the sources of information and considered them reliable on the basis of their past record of reliability; or (4) *in camera* review of material documenting the investigator's assessment of the credibility of the confidential informant.

---

[2] As Plaintiff states, Brookman testified that if he had changed his recommendation, it would have been at the request of the warden. (*See* Doc. 169-2, p. 55-56).

*Mendoza v. Miller,* 779 F. 2d 1287, 1293 (7th Cir. 1985) (internal quotations and citations omitted).

In the final summary, the Adjustment Committee found the confidential informants reliable based upon "verification" by Spiller. But as Plaintiff points out, Spiller was not present at the hearing, he was not interviewed, and it does not appear he provided any kind of witness statement or affidavit for the Adjustment Committee. (Doc. 169-2, p. 46; Doc. 169-3, p. 40). *See Allen v. Parke,* 114 F. App'x 747, 751 (7th Cir. 2004) (officer's affidavit outlining how the confidential informants "were shown reliable through corroborating testimony and [the officer's] firsthand knowledge of the information's source"). Thus, it does not appear that Spiller's verification is sufficient to satisfy due process, and "the reliability of the confidential sources was not established under any of the other required methods." *Gutierrez v. Baldwin,* No. 18-cv-01478-SMY, 2022 WL 18027527, at *7 (S.D. Ill. Dec. 30, 2022). Furthermore, in the final summary report, the Adjustment Committee simply adopts the statements made in the disciplinary ticket, "instead of making its own statement of the evidence relied on and the reasons for the disciplinary action." *Id.* (citing *Hayes v. Walker,* 555 F. 2d 625, 631-32 (7th Cir. 1977)). *See also Redding v. Fairman,* 717 F. 2d 1105, 1114-15 (7th Cir. 1983) (it is constitutionally insufficient to merely incorporate the investigating officer's report). Accordingly, a reasonable juror could find that the decision by the Adjustment Committee did not have any factual basis for its decision.

The Seventh Circuit is clear that "[t]o satisfy due process, a hearing 'must be a real one, not a sham or a pretense.'" *Orozco v. Butler*, 766 F. App'x 365, 369 (7th Cir. 2019) (quoting *Ryan v. Ill. Dep't of Children & Family Servs.*, 185 F.3d 751, 762 (7th Cir. 1999)). Material issues of fact exist with respect to whether the disciplinary hearing complied with due process requirements and was not merely pretense to unjustly punish Plaintiff. Accordingly, Count 3 is reinstated to the extent Plaintiff claims he was denied due process by the Adjustment Committee members, Brookman and Hart. Count 3 will also proceed against Warden Lashbrook. Based on Brookman's

alleged comments and deposition testimony, and Lashbrook's signature on the final summary report, there is a material issue of fact regarding her participation in the Adjustment Committee's proceedings and disciplinary recommendations. *See Chavez v. Cady,* 207 F.3d 901, 906 (7th Cir. 2000) (a supervisory official may be personally liable if they know about an ongoing constitutional violation and approve of it).

Likewise, because it is disputed whether Plaintiff was provided due process, Spiller is no longer entitled to summary judgment on Plaintiff's claim against him based on the issuance of a false disciplinary ticket in Count 2. *See McPherson v. McBride,* 188 F. 3d 784, 787 (7th Cir. 1999).

## II. Conditions of Confinement

Plaintiff next asks the Court to reconsider the dismissal of Count 11, an Eighth Amendment unconstitutional conditions of confinement and First Amendment retaliation claim against Spiller. In dismissing Count 11, the Court found that there was no evidence for a jury to infer that Spiller had any knowledge about the state of Plaintiff's cell or that he was aware Plaintiff did not timely receive his property and medication from the cell house staff after moving cells. (Doc. 187, p. 17-18). While Spiller escorted Plaintiff to the segregation cell, Plaintiff failed to demonstrate that Spiller ever came back to the cell or that Plaintiff notified Spiller of the condition of his cell. (*Id.* at p. 18).

As evidence that Spiller was aware of the conditions of his cell, Plaintiff now points to his verified Amended Complaint. In the Amended Complaint, Plaintiff asserts, "Several times I saw Intel Officer Spiller and complained to him about me not having my property. Spiller acknowledged that he new I did not have my property but still did nothing to assist me in receiving my property." (Doc. 88, p. 10-11). He further states, "Plaintiff made Spiller aware of his conditions and Spiller having the authority and duty to rectify the situation instead did nothing." (*Id.* at p. 39). Plaintiff also contends that the Court is mistaken in ruling that he did not provide any evidence

refuting property procedure as explained by Defendants. (*See* Doc. 187, p. 18). He argues that in his Affidavit he states that it was the "jail's practice to allow prisoners going to segregation to pack a hygiene kit, Spiller refused to allow me to pack any hygiene items…instead Spiller told me that my things would catch up with me." Plaintiff states that Defendant Gee's deposition testimony supports this assertion his Affidavit.

The Court will not amend its ruling as to Count 11. Nowhere in Plaintiff's response in opposition to the motion for summary judgment, response to Defendants' alleged undisputed material facts, and Plaintiff's statement of additional uncontroverted material facts does Plaintiff assert that he spoke with or saw Spiller after being placed in investigative segregation on April 26, 2017. (Doc. 179, 180, 181). In support of his response in opposition to the motion for summary judgment, Plaintiff chose to rely on his signed Affidavit. The onus was on Plaintiff to argue he personally spoke to Spiller and to bring his verified Amended Complaint to the Court's attention if he believed it supported a material fact, which he did not. *See* FED. R. CIV. P. 56(e)(3). Arguments "that could have been raised earlier but are instead raised for the first time in a Rule 59 motion are waived."

The Court also still finds that there is not an issue of material fact regarding whether Spiller denied Plaintiff his property at the time of his cell transfer and placed him in a dirty cell with retaliatory motives. Plaintiff's statement in his Affidavit that it was "practice to allow prisoners going to segregation to pack a hygiene kit" is conclusory. (Doc. 181-1, p. 4). Even if it was common practice to allow inmates to carry their own hygiene kit to segregation, this statement does not create a triable fact as to whether Spiller had a retaliatory motive for not allowing Plaintiff to gather his property prior to his transfer to investigatory segregation. Furthermore, contrary to his assertions, Defendant Gee's deposition testimony does not support this claim. When asked if Plaintiff "was brought to you after his second interview, would he typically be able to go back to

his general population cell to get his personal belongings?" Gee answered, "No." (Doc. 169-5, p. 57). Gee stated "they would have put the bed roll[3] together" – meaning staff. (*Id.* at p. 57). As the Court previously found, there is also no evidence that Spiller had any involvement in Plaintiff's cell assignment or the packing and delivery of his property. Accordingly, Count 11 remains dismissed.

### ADDITIONAL BRIEFING

In granting in part the motion for summary judgment, the Court ruled in favor of Warden Lashbrook as to Count 1 – failure to intervene in Plaintiff's retaliatory placement in investigative segregation. (Doc. 187, p. 9). The Court found that there was no evidence that Lashbrook knew of his retaliatory placement in restrictive housing. (*Id.*). Plaintiff then argued in the first motion to reconsider that the Court granted summary judgment in favor of Warden Lashbrook based on arguments not raised by Defendants in the motion for summary judgment. The Court found that Plaintiff has had a "meaningful opportunity to come forward with all of [his] evidence," regarding when and how Lashbrook received knowledge of his wrongful placement in investigative segregation, and the evidence presented did not demonstrate a genuine issue of material fact. (Doc. 215, p. 5) (citing *Sublett v. John Wiley & Sons, Inc.*, 463 F. 3d 731, 736 (7th Cir. 2006)). However, to ensure that the issue is fully briefed, the Court granted leave for Plaintiff to file a supplemental brief setting forth any additional argument and evidence as to whether Lashbrook had a "realistic opportunity" to prevent Plaintiff's alleged retaliatory placement in investigative segregation by Defendants Spiller, Gee, Leek, Reighert, and Verble. If Plaintiff filed such brief, Defendants were given 7 days to respond. *See* FED. R. CIV. P. 56(f) (after notice and reasonable time to respond, the court may "grant the motion on grounds not raised by a party").

---

[3] Gee stated a "bed roll" includes sheets and hygiene items. (Doc. 169-5, p. 54).

In Plaintiff's additional briefing, he provides emails sent to Lashbrook from Defendant Spiller and Reichert informing her of the ongoing investigation into the April 23, 2017 staff assault. (Doc. 221). He also points to Reichert's deposition in which he testified that Lashbrook was kept informed verbally and in writing of anything found during the pendency of the investigation. Plaintiff argues Lashbrook's contemporaneous awareness of his placement in investigatory segregation gave rise to a realistic opportunity to intervene on his behalf to prevent his retaliatory confinement.

While the emails show that Lashbrook was updated on the progress of the investigation, which included identifying Plaintiff as involved in gang leadership as the "Cell House Chief Elite" and his subsequent placement in investigative segregation, the emails fail to inform the reader of a retaliatory motive against Plaintiff by staff for failure to cooperate in the investigation. (Doc. 221-3, p. 1; Doc. 221-4, p. 1). The emails are heavily redacted, and Plaintiff made no effort to "mitigate the effect of the redactions by seeking to file unredacted copies under seal or through an *in camera* review." *In re Earl Guadio & Son, Inc.,* No. 13-90942, 2018 WL 3388917, at *22 (C.D. Ill. July 10, 2018) (denying in part motion for compensation finding that the court cannot "grant relief based on documents with critical information redacted and…the burden was on [Plaintiff] to provide the required information to this Court."). The Court cannot guess as to the content of the redact portions and "need not give credence to facts based on speculation or conjecture." *Gupta v. Melloh,* 19 F. 4th 990, 997 (7th Cir. 2021). Accordingly, there is no genuine issue of material fact regarding whether Lashbrook knew the other Defendants retaliated against Plaintiff by placing him in investigative segregation and then deliberately failed remedy the situation. Count 1 as to Lashbrook remains dismissed.

**MOTIONS IN LIMINE**

In light of this Order and the previous Order granting in part the motion to reconsider, the

pending motions *in limine* are denied without prejudice. (Doc. 200, 204). The parties are instructed to refile motions *in limine* and Rule 26 disclosures pursuant to the following schedule:

> Rule 26(a)(3) disclosures are due on or before **August 17, 2023.** Objections shall be filed 14 days after the disclosures are made. The disclosures and objections shall be filed electronically with the Court. Motions in limine shall also be filed on or before **August 17, 2023**. Responses in opposition to the motions in limine must be filed no later than 14 days after a motion is filed. The parties should bring their Rule 26(a)(3) disclosures and any objections, motions in limine and any responses, and a proposed draft of jury instructions to the Final Pretrial Conference. The Joint Final Pretrial Order and draft jury instructions shall be emailed to spmpd@ilsd.uscourts.gov three days prior to the Final Pretrial Conference.

## DISPOSITION

For the reasons stated above, the Court **GRANTS** Plaintiff's request to supplement the motion for reconsideration, and the additional the requests to further reconsider the Order on the motion for summary judgment are **GRANTED in part** and **DENIED in part**. (Doc. 214).

The Court **VACATES in part** and revises the Order on the motion for summary judgment as follows (Doc. 187): The Court **DENIES** summary judgment as to Count 3 against Defendants Brookman, Hart, and Lashbrook to the extent Plaintiff is claiming he was denied due process in connection with the disciplinary proceedings. The Court **DENIES** summary judgment as to Count 2 against Defendant Spiller for violating Plaintiff's due process rights by issuing him a false disciplinary ticket. The Clerk is **DIRECTED** to reinstate Defendants Brookman and Hart as parties on the docket. After notice and further briefing, Count 1 as to Lashbrook remains **DISMISSED.** (*See* Doc. 215, 221).

This action will proceed to trial on the following counts:

**Count 1:**   Defendants Spiller, Gee, Leek, Reichert, and Verble individually, and in conspiracy with one another, violated the First Amendment by placing Plaintiff in investigative segregation in retaliation for refusing to cooperate with prison officials' investigation of a staff assault, or by failing to remedy the illegal placement.

**Count 2:**   Defendants Spiller retaliated against Plaintiff in violation of the First

        Amendment and violated his due process rights under the Fourteenth Amendment by issuing him a false disciplinary ticket.

**Count 3:**    Defendants Brookman, Hart, and Lashbrook violated the Fourteenth Amendment by denying Plaintiff due process in connection with the disciplinary proceeding.

**Count 13:**    Defendants Baldwin and Lashbrook subjected Plaintiff to unconstitutional strip searches when they enforced a policy of strip searching all segregation inmates at Menard in violation of the Eighth Amendment.

The motions *in limine* are **DENIED without prejudice** to be refiled, as provided in this Order. (Doc. 200, 204).

**IT IS SO ORDERED.**

**DATED:   July 20, 2023**

                                             *s/Stephen P. McGlynn*
                                             **STEPHEN P. MCGLYNN**
                                             **United States District Judge**